(107 App. Div. 529.)

UNION BAG & PAPER CO. v. ALLEN BROS. CO. et al.

(Supreme Court, Appellate Division, Third Department. September 13, 1905.)

1. WATERS AND WATER COURSES—GRANTS AND RESERVATIONS OF EASEMENTS.
    An owner built a dam and dug a flume through his land. Thereafter he divided the land into lots, and made separate conveyances thereof from time to time, giving the grantees rights to use the water in the flume in designated quantities, subject to reservations in favor of the owner. *Held*, that the water rights granted and reserved were easements connected with the ownership of the land, and when all the lots were conveyed no water rights remained in the owner, though the amount of water in the flume exceeded the quantity conveyed by the deed; it being the intention of the owner to convey to the grantees all the water in the flume.

2. SAME—RIGHTS TO USE WATERS IN A FLUME—EXTENT OF USE.
    Where a grantee of a lot, in a deed conveying it, together with the right to use a designated quantity of water in a flume passing through the lot, and his predecessors, possessing the same right, had for over 20 years openly drawn and used, under a claim of right, water in excess of the quantity fixed in the deeds without objection from any one, and they had, in reliance on the right to use such quantity, improved their lot at large expense, the court properly found that the grantee was entitled to use such quantity.

3. EQUITY—RELIEF.
    Equity gives relief adapted to the situation at the time of entering its decree, and the refusal to modify a decree so as to make it speak as of the commencement of the suit is properly refused.
    Smith and Houghton, JJ., dissenting.

Appeal from Judgment on Report of Referee.

Action by the Union Bag & Paper Company against the Allen Bros. Company and others. From a judgment determining the

rights of defendants to water in a raceway, and from the judgment as amended by order of the court and re-entered, and from so much of an order as denied a motion for an amendment of the judgment, plaintiff appeals. Affirmed.

See 88 N. Y. Supp. 368.

This action is brought to define the rights of the parties in a certain raceway or flume, and the water therein, which raceway or flume leads water from a dam in the Hudson river at Sandy Hill, N. Y., to and over the lands of the defendant Allen Bros. Company (hereinafter called the defendant), and to and over the lands of the plaintiff; and the plaintiff seeks to enjoin the defendant from taking any water from said raceway or flume, in excess of an amount that can be taken through orifices in said raceway or flume, aggregating 270 and 350 square inches, respectively. The judgment provides that the defendant "has the right, prior to any right of the plaintiff, to draw from the said flume, at its present width and depth and use, as hereinabove declared, $620/_{1915}$, or nearly one-third, of the flow of water in said flume at a depth of water therein of nine feet at least, before lowering by discharge or use, but at such less depth as such discharge or use may cause, except that the plaintiff has concurrent right to draw and use therefrom $120/_{1915}$ of the entire flow under the like head of nine feet before lowering by discharge or use, but next after the defendant Allen Bros. Company's right to use $270/_{620}$ of its portion." The judgment also provides in substance that the plaintiff is entitled to the balance of the water from said flume.

Argued before PARKER, P. J., and SMITH, CHASE, CHESTER, and HOUGHTON, JJ.

Simpson, Thacher & Bartlett (Alfred B. Thacher, of counsel), for appellant.

Hand & Hale (Richard Lockhart Hand and Edgar T. Brackett, of counsel), for defendant Allen Bros. Co.

CHASE, J.   Baker's Falls are rapids in the Hudson river at Sandy Hill, N. Y. They extend a distance of about 1,000 feet, and in such distance the fall is about 60 feet. The Hudson river at that point is the line between the counties of Washington and Saratoga, and the lands and flume in question are in Washington county. In 1843 Perry & Harvey were the owners of the real property adjoining said river at Baker's Falls in Washington county, and for a short distance north and south of the same, together with such water rights as were appurtenant to the ownership of such real property. The lands so owned by Perry & Harvey included all of the lands now owned by the defendant and all of the lands owned by the plaintiff which are shown in the diagram herewith. At that time there was an old mill on lot 5, and a flume extended from a wing dam a little north of the crest of the falls to such old mill; but the mill and flume were not in use, and were in a dilapidated condition. There is now a dam across said river, commencing on the east side where said old wing dam was formerly situated, and it extends in a northwesterly direction to the Saratoga county side of the river. The plaintiff is the owner of the flume and the land on which the same is built, from said dam southerly about 130 feet. Over the river side of that part of said flume is a spillway. From the southerly end of said spillway the defendant owns the lands along the river southerly about 287 feet, and adjoining the defendant's lands on the

south the plaintiff owns the lands along the river southerly to a point below the southerly end of the flume as now erected. The following diagram shows, generally, the dam and flume. Defendant's lands along the river are divided into four parts, designated 3, 4, 5, and 6. The defendant also owns lot 1. The plaintiff, among other lots, owns lot 2 (flume with spillway), and lots 7 to 15, inclusive.

The lands adjoining said flume below the spillway are now practically covered with expensive mills, and substantial rights by both the plaintiff and the defendant in said flume and the water therein are not only important for them, but absolutely essential to the value and maintenance of their plants, respectively. The title by grant of the parties, respectively, to said lands and water rights, came from Perry & Harvey, and it is assumed that whatever rights in said flume and in the water therein that are not owned by the de-

HUDSON    RIVER

fendant are owned by the plaintiff. Perry & Harvey, while the owners of all of said lands, cut the same into lots, and attempted to and did sell the lots, together with certain rights to take water from the flume, which they conceived could be extended and enlarged, and thus utilized to make valuable the lots into which they divided the lands. The defendant's title is included in four deeds to its predecessors in title, one of which was given pursuant to a contract therefor and a perpetual lease thereof, which lease and contract were executed by Perry & Harvey on the 3d day of November, 1843, and in which lease and contract it speaks of a raceway or flume to be built, and by the deed following such lease and contract, which is dated March 9, 1846, said lot 5 is conveyed. Such deed also contains further grants and rights, and is made subject to certain liabilities, which are stated therein as follows:

"Together with the privilege of taking, drawing, and using from any part of a continuation towards the river of the raceway or flume above mentioned which may lie or be contiguous or adjacent to the above-described premises so much water as may be discharged by one or more spouts from said flume or raceway whose orifice or orifices in the aggregate shall be equal to two

hundred and seventy square inches of surface (or by a spout twenty-two and a half inches caliber by twelve inches) at the place where the water is to be discharged by the gate or gates; such continuation of said flume to be made by the said parties of the second part. * * * The premises hereby conveyed, or intended so to be, are conveyed subject to the liability or burden on the part of the said parties of the second part, their heirs and assigns, of bearing and defraying their just proportion according to the water let in with the other proprietor or proprietors of said flume or raceway, and the bulkhead and dam thereof, so constructed by the said parties of the first part aforesaid from time to time as occasion requires, of all costs and expenses of reconstructing, maintaining, and repairing hereafter the aforesaid flume or raceway and bulkhead and dam. * * *"

One other deed conveys said lot 4, and it includes certain further grants and rights, and is made subject to certain liabilities, which are stated therein as follows:

"Excepting and reserving from and out of the above-described premises the right to flow and pass water without any obstruction or hindrance over and through and across said premises in the raceway now upon said premises, and to deepen and raise said raceway at such time and times as said Miller [grantor], his heirs and assigns, may see proper so to do, and to widen said raceway on the easterly side thereof, so that the whole width shall not exceed 30 feet, and to deepen and raise the same as said Miller his heirs and assigns shall think proper. Also the right at any time or times to widen said raceway on the easterly side thereof to a width exceeding said 30 feet on paying said Allens, their heirs and assigns, any damages occasioned to any buildings or permanent erection by such enlargement exceeding 30 feet, reserving the right to remove so much of the old factory building as stands on land conveyed. * * *"

One other deed conveys said lot 3, and it includes certain further grants and rights, and is made subject to certain liabilities, which are stated therein as follows:

"Together with the right to the party of the second part to draw and use three hundred and fifty (350) inches of water without limit to head, to be measured in the customary way or as others are measured on the same raceway, excepting and reserving from and out of the above-described premises to the parties of the first part the right to pass and flow water, without any obstruction or hindrance, through, across, and over the same in the present raceway, or in any new one that may hereafter be built, and reserving the right to widen, deepen, and raise the same to any extent necessary for privileges below, provided the said raceway be not raised higher than the present dam. And the said party of the second part covenants. and agrees to and with the parties of the first part to build a good and sufficient stone and cement raceway the whole length of the said 100 feet, and at such place as shall seem best, not further eastwardly than the westerly part of the present raceway, and of such height as the present dam, and also to build a stone and cement wall, westwardly of the raceway and nearly parallel with the same, 100 feet long and of such height as to exclude the water of the river from the space between the two walls, and also to leave a blank archway as far south as possible in above-named wall for discharge of water from buildings above, with the right to the parties of the first part to flow the water through between said wall and out at said archway whenever they deem best. It is further mutually agreed that said Miller shall have the benefit of the expense of building said raceway in accounting with other parties in interest in the same manner and to the same extent as though he had built the same himself and at his own expense. * * *"

This deed is also made subject to the conditions and limitations contained in certain previous deeds.

One other deed conveys said lot 6 as shown on the diagram, sub-

ject to rights of other persons named in said deed, and it includes certain further rights, and is made subject to certain liabilities, which are stated therein as follows:

"And also excepting and reserving to the parties of the first part, their heirs and assigns, the right to draw water through and to use the raceway across the premises hereby conveyed, together with the right to enter upon and through said raceway for the purpose of repairing same and of removing any obstructions to the free and natural flow of the water through said raceway, and the right to widen said raceway, if necessary, on the easterly side only; provided, however, that if it be widened to a width of more than 30 feet all damages incurred by the parties of the second part, their heirs and assigns, by reason of said widening to a greater width than 30 feet, shall be paid by the party or parties so widening same. * * * In consideration of the foregoing the said Hiram Allen and Loren Allen, the parties of the second part hereto, hereby on their part covenant and agree to and with the parties of the first part: * * * Second. That they will use no water from the raceway by virtue of their present rights upon the premises hereinbefore conveyed under a greater head than thirty-one feet for its first use, and that they will not use said water upon the premises heretofore owned by them under a greater head than thirty-two feet for the first use of the 270 inches of water first acquired by them and thirty-one feet for the first use of the 350 inches of water purchased by them of S. A. Parks, all measurements of head to be made from the level of water in the raceway when said raceway is full. And in consideration of the foregoing it is hereby mutually covenanted and agreed by and between the parties hereto that, while the first use of the 270 inches of water first acquired by the parties of the second part is herein limited to thirty-two feet, said limitation shall not be construed as a permission to use the same under any greater head than the said parties of the second part have heretofore had the right to use the same."

Lots 7 to 15, inclusive, now owned by the plaintiff, were sold by Perry & Harvey and their successors in interest many years ago. In the conveyance of each of said lots are specific covenants in regard to said flume. With the conveyance of one of said lots of land there was conveyed "one-eighth part of one-half of the waters of said river naturally flowing in the channel thereof, and over and across the land so to be divided as aforesaid, being one-eighth part of the waters of said river formerly owned by said Perry & Harvey." With the conveyance of another of said lots of land there was conveyed the right to take 350 inches of water at 18-foot head, with another lot of land 300 inches of water at 30-foot head, with other lots of land 500 inches of water at 32-foot head, and with another lot of land 25 inches of water at 32-foot head; and each grantor assumed a proportion of the expense of repairing and enlarging the raceway, bulkhead, and dam. When lot 15 was sold no right was reserved in the conveyance to continue the flume over that lot for the benefit of the lands adjoining it on the south.

It appears from the record that the flume over the lands of the defendant and over the lands of the plaintiff south of the defendant's land is east of the waters of the river and wholly within the boundaries of the lots through which it is erected. The rights of the owners of the several lots of land to have the flume maintained so as to convey the water to their lots of land, respectively, and the rights of said owners in and to said flume and the waters thereof, is dependent upon the conveyances and agreements relating thereto. The rights of the owners of the several lots of land in said flume and the water therein are easements. Such rights reserved by Perry &

Harvey and their successors in interest were not untransferable personal agreements or rights merely, but easements and rights inseparably connected with the ownership of the fee of the land. 14 Cyc. 1140–1184. When the fee of all of the lots of land was sold, there were no rights remaining in Perry & Harvey and their successors in interest in any way subject to conveyance. The plaintiff's claim that the conveyance of a specific number of inches of water from time to time always left a residue of water unsold for the benefit of the remaining lots of land has nothing on which to stand, when it appears that all of the lots of land over which the flume is built were sold without conveying any such claimed residue of water. The right to take water from said flume is dependent upon the ownership of a dominant estate. Although the amount of water in such flume is several times more than is represented by the flow from orifices aggregating the number of square inches specifically conveyed, yet the trial court has found in substance that it was the intention of the grantors by the several conveyances to sell to the persons to whom a specific number of inches of water was conveyed all of the water flowing or which might thereafter flow through such flume. The number of inches of water conveyed by the several conveyances of lots of land south of the lands of the defendant is 1,175 inches. Adding to such amount the number of inches of water conveyed with the lots of land now owned by the defendant, being 620 inches, the aggregate amount is 1,795 inches. There is a specific conveyance of one-half of one-eighth of the water in one of said deeds to the plaintiff's grantors. Treating the 1,795 inches as fifteen-sixteenths of the whole amount of water in said flume, said one-half of one-eighth of the water of said flume is represented by 120 inches, making the total of the specific grants of water represented by 1,915 inches.

The trial court has found in substance that on November 2, 1882, the grantors of the defendant had for more than 20 years been openly drawing and using under the grant to them of said lot 5 a quantity of water largely in excess of 270 square inches, supposing such quantity to be approximately 270 square inches, being the same quantity which was in use upon said lot February 12, 1862, when they took title thereto; and it is adjudged that the water used was equivalent to $270/1915$ of the present flow of water in the raceway at nine feet depth of water without lowering by discharge; and it is also adjudged that such use of water is approximately within the true measure of 270 inches, and that its use was never challenged by the parties interested therein. The trial court has also found that said grantors, on November 2, 1882, and since about April 1, 1865, had been using, under the deed to them of said lot 6, a quantity of water largely in excess of 350 square inches, supposing such quantity to be approximately 350 square inches; and it is adjudged that the water used was equivalent to $350/1915$ of the present flow in said raceway at nine feet depth of water therein without lowering by discharge. And the trial court further finds that for more than 20 years before the commencement of this action the defendant and its grantors have openly and under a claim of right, and

without challenge of the right so to do until about the time of the commencement of this action, used $\frac{620}{1915}$, or nearly one-third of the flow of water in said flume, measured as in said findings stated; and it further finds and adjudges that the defendant, relying upon such measure of the 620 inches as so practically adopted and long acquiesced in by the plaintiff and its grantors, has expended a large amount of money on its said property. If a right to flow water through said flume can be said to be an easement appurtenant to lot 2 or the dam, and that such easement has been conveyed to the plaintiff by conveyances other than those conveying lots 7 to 15, inclusive, it should not affect the result in this case if the trial court was right in its said findings as to the practical construction of the deeds to the grantors of the parties, respectively.

As between the parties to this action, through whose lands the flume is erected, and who seem to hold their rights in the water therein by grant of a specific number of inches (except as to such one-half of one-eighth), a division of the water in the proportion which each holds such specific grants of water is equitable. And as the use by the defendant and its predecessors in title for a long period of years of approximately $\frac{620}{1915}$ of the water in said flume, and the payment by it and its predecessors in title during said years of $\frac{620}{1915}$ and more of the expense of maintaining said flume, bulkhead, and dam is substantially undisputed, we cannot say that the trial court was in error in holding that the defendant is entitled to continue the use of $\frac{620}{1915}$ of the water of said flume as stated in the judgment. And the court could have further found that the defendant, by its use of such proportion of the water of the flume for so long a period of time under the conditions and claims shown by the record, acquired by prescription a right so to use the same. The practice in equity is to give relief adapted to the situation at the time of the decree. Peck v. Goodberlett, 109 N. Y. 180, 16 N. E. 350; Van Allen v. New York E. R. R. Co., 144 N. Y. 174, 38 N. E. 997; 16 Cyc. 479. The order which refused to modify the judgment so as to make it speak as of the time of the commencement of the action is right.

The judgment should be affirmed, with costs, and the order should be affirmed, with $10 costs and disbursements. All concur, except SMITH and HOUGHTON, JJ., who dissent.