■ SEYMOUR BROWN, Respondent, v PRESSNER TRADING CORP., Appellant, et al., Defendant. — Judgment, Supreme Court, New York County (Ryp, J.), entered July 27, 1983, after a nonjury trial, awarding plaintiff $29,000, with interest, from January 20, 1975, reversed, on the law and the facts, without costs or disbursements, the judgment vacated and the complaint dismissed. ¶ In August, 1974, plaintiff opened a margin account with defendant, a commodities broker, for the purpose of speculating in contracts for the future delivery of silver. He thereafter deposited $29,000 with defendant to cover these investments. By December 31, 1974, however, plaintiff had already liquidated certain losing investments and the cash balance in his account had been reduced to $25,554. Plaintiff had also accrued further unrealized investment losses of $17,425, which represented the decline in the aggregate market value of the contracts he continued to hold from the respective dates of their purchase. Thus, the net value of plaintiff's account on December 31, 1974 was $8,129. ¶ On that day, plaintiff, concerned about his mounting investment losses, requested that defendant "sell short" for his account two May, 1976 silver contracts. The effect of such a short sale would have been to create a "hedge" between plaintiff's obligations to buy silver and his obligations to sell. Plaintiff testified that his purpose in selling short was to obtain some protection against further losses while he pondered his next speculative move. The short sale requested by plaintiff, however, was never executed. In fact, exchange rules prohibited execution of plaintiff's order at any time on December 31, 1974 since the silver market was "limit down", meaning silver contracts were trading at a price 20 cents per ounce or more removed from the closing price of the previous trading day. The market opened "limit down" at "495.80", or 20 cents per ounce lower than the previous day's closing price of "505.80". Plaintiff's order to sell short could not have been filled until the next trading day, January 2, 1975. ¶ Although plaintiff testified that he was advised on December 31, 1974 by Tomaselli, defendant's clerk, that the order had been executed, Trial Term implicitly rejected that claim when it premised defendant's liability upon a failure to inform plaintiff at the time he placed his sell order that the market was "limit down." Tomaselli denied ever telling plaintiff that the order had been executed. On January 8, 1975 plaintiff learned that the short sale order of December 31 had not been executed. Rather than sell short at the then-current price plaintiff insisted that the short sale be placed in his account as if made on December 31, 1974. Defendant refused. When the balance in plaintiff's account continued to fall as a result of a continuing drop

in the price of silver, plaintiff refused to provide additional margin and his contracts were liquidated. ¶ Finding that plaintiff's margin account was closed out as a direct result of defendant's failure to execute the December 31, 1974 sell order and to give timely notice of that fact, Trial Term awarded plaintiff $29,000, representing his entire investment, as consequential compensatory damages. ¶ Since we find that the judgment in plaintiff's favor is against the weight of the credible evidence we reverse and dismiss the complaint. Contrary to Trial Term's finding, defendant did not have a duty to advise plaintiff, at the time of his call, that his order could not be filled since plaintiff's order, given at approximately 10:44 A.M., was not necessarily impossible to execute that day. Although the market had opened "limit down" and the trade could not be executed at the time it was called in, the price might have rebounded above the lower limit at some time later in the day, thus enabling defendant to execute the order. Furthermore, Trial Term's premise for holding defendant liable, that defendant withheld notification to plaintiff that the market was "limit down", does not lead to a finding of liability since, in any event, even if plaintiff had known the facts allegedly withheld from him, he could not have compelled the sale. Plaintiff offered no evidence that he could or would have pursued some other course had he known that the order could not be filled. Moreover, the trade custom required telephone confirmation of executed trades, not of failure to execute trades. The uncontradicted testimony established that the practice at the exchange is that an order which is not executed on the day requested lapses unless specific instruction is given to keep the order open until filled. Thus, when the trading day ended on December 31, 1974, plaintiff was put on constructive notice that the trade had not been executed. Consequently, absent a finding that defendant expressly misrepresented the status of the order, a finding which Trial Term refused to make, despite plaintiff's testimony to that effect, any mistaken belief on plaintiff's part must be held to be a result of his own unfamiliarity with the practices of the trade. ¶ Even if defendant is assumed to have breached some duty to plaintiff in failing to advise him that the short sale could not be executed, defendant would be liable, not for plaintiff's entire speculative investment in silver futures contracts, including losses already realized long before December 31, 1974, as Trial Term found, but only for the difference between the price at which he could have executed the desired transaction were it not for defendant's breach, and the price at which he could have executed the transaction after he learned that it had not been effected earlier. When a broker wrongfully fails to purchase or sell a security as directed, the customer's damages are limited to the cost of covering or replacing the security. If the customer fails to cover within a reasonable time, damages are limited to the potential cost to cover, measured from the time he learns of the broker's failure and for a reasonable time thereafter in which he must decide his course of action. (See *Galigher v Jones,* 129 US 193; *Baker v Drake,* 53 NY 211; *Matter of Salmon Weed & Co.,* 53 F2d 335.) A customer may not, as here, refuse to cover a transaction previously requested and thereby speculate on the market entirely at the risk of the broker. (See *Wright v Bank of Metropolis,* 110 NY 237; *Phillips v Bank of Athens Trust Co.,* 202 Misc 698.) In any event, a broker is not liable for previously accrued losses on a customer's speculative investment as a result of liquidation of his existing contracts for failure to post additional margin. Concur — Sullivan, Silverman, Milonas and Kassal, JJ.

Kupferman, J. P., dissents in part in a memorandum as follows: I would reverse and remand for further proceedings. ¶ The only legitimate basis for disagreement with the determination of the Trial Judge is that the plaintiff had an obligation to mitigate damages when actually informed on January 8, 1975 that the short order sale had not been executed on December 31, 1974.

Accordingly, the matter should be remanded to determine what those damages would be, which, from the available record, would seem to be only a fraction of the damages awarded. ¶ There is no valid basis for this court to disagree with Trial Term's implicit finding that defendant's clerk had advised the plaintiff that the order had been executed. Further, the broker, being an agent, and with the volatile market, there was an obligation to keep the client informed, which was not done.