[No. 13902-9-I.   Division One.   December 31, 1986.]

HARPER & ASSOCIATES, ET AL, *Respondents,* v.
PRINTERS, INC., *Appellant.*

*William McInerney, Jr., Bruce Weiland,* and *Cable, Barrett, Langenbach & McInerney,* for appellant.

*D. Bruce Gardiner,* for respondents.

GROSSE, J.—Printers, Inc., appeals an adverse judgment and award of damages arising from a contract for sale.

Printers submitted the low bid to Harper & Associates to manufacture a high quality fine arts poster to be sold as an art piece through Harper's and other art galleries. The bid included the printing of invitations to a show at the gallery and of postcards related to the posters. The postcards were to be sent to 2,000 galleries around the country to promote sales of the posters. Harper planned a show at its gallery featuring the works of a Seattle artist. This show was the subject of the poster and the invitations.

One week before the show, Harper conducted a press check of the posters and rejected them as unsuitable in

color. The invitations were also of "poor quality" but Harper accepted them because they were necessary to the show. The postcards were completed sometime after the show ended on November 18, 1981. They were rejected by Harper since they did not meet postal regulations for postcard size.

In January of 1982, Harper began to formulate an alternative sales plan for the posters. Harper opened discussions with a local art poster wholesaler who agreed to purchase the posters for resale by him. Harper had intended to sell the posters direct at a price of $12.50 each. The wholesaler agreed to pay a price of $5 each. Printers delivered the posters from the second printing run on January 11, 1982. Harper examined the posters and 2 days after delivery telephoned Printers' agent stating that there were problems with the second printing and that he should come examine them. The posters were returned to Printers the first week of February 1982, and Harper's attorney wrote to Printers demanding complete performance by February 18. No such performance was tendered. Harper then contracted with another printer to produce only the posters, but at a higher price. In April of 1982, Harper sued for damages for Printers' failure to timely deliver posters, postcards, and invitations, and for its failure to deliver posters of a quality suitable for sale.

Printers first argues the trial court erred by denying its motion to amend its pleadings to add the affirmative defense of impossibility. Impossibility may be an affirmative defense in a contract case. Because this case involves a sale of goods, the Uniform Commercial Code (UCC) governs analysis of the issues.

■ The narrow defense of "impossibility" has been subsumed in the more commercially oriented and broader theories of "impracticability".[1] Official Comment 3 to RCW

---

[1]The Restatement (Second) of Contracts § 261 (1981) specifically adopts this broader approach, referring to U.C.C. § 2–615. *See also* Restatement (Second) of Contracts, ch. 11, Introductory Note, at 311 (1981); *cf. Metropolitan Park Dist. v.*

62A.2–615 states:

> The first test for excuse under this Article in terms of basic assumption is a familiar one. The additional test of commercial impracticability (as contrasted with "impossibility," "frustration of performance" or "frustration of the venture") has been adopted in order to call attention to the commercial character of the criterion chosen by this Article.

To Printers' benefit, the trial court applied the broader theory of impracticability, but correctly recognized that the defense was unavailable to Printers on these facts. RCW 62A.2–615(a) provides in full:

> Delay in delivery or non–delivery in whole or in part by a seller who complies with paragraphs (b) and (c) is not a breach of his duty under a contract for sale if performance as agreed has been made impracticable by the occurrence of a contingency the non–occurrence of which was a basic assumption on which the contract was made or by compliance in good faith with any applicable foreign or domestic governmental regulation or order whether or not it later proves to be invalid.

Official Comment 8 to RCW 62A.2–615 notes the limits of the excusable exceptions to performance:

> The provisions of this section are made subject to assumption of greater liability by agreement and such agreement is to be found not only in the expressed terms of the contract but in the circumstances surrounding the contracting, in trade usage and the like. Thus *the exemptions of this section do not apply when the contingency in question is sufficiently foreshadowed at the time of contracting to be included among the business risks which are fairly to be regarded as part of the dickered terms, either consciously or as a matter of reasonable, commercial interpretation from the circumstances.* The exemption otherwise present through usage of trade under the present section may also be expressly negated by the language of the agreement. Generally, express agreements as to exemptions designed to enlarge upon or supplant the provisions of this section are to be

---

*Griffith,* 106 Wn.2d 425, 723 P.2d 1093 (1986) (reviewing the law of this jurisdiction regarding the doctrines of impossibility and commercial frustration).

read in the light of mercantile sense and reason, for this section itself sets up the commercial standard for normal and reasonable interpretation and provides a minimum beyond which agreement may not go.

(Citation omitted. Italics ours.)

In this case the contingency or problems which arose were difficulties in attaching a required foil overlay to the poster. This potential problem was known and was discussed prior to the contract being made. Printers' agents had indicated to Harper that "it could do anything its competition could, and probably at less price." These difficulties in the job were knowingly assumed by Printers at the time of contracting and, therefore, preclude the defense of impracticability under the UCC. Thus, whether the affirmative defense of impracticability was properly raised by the implied consent of the parties or otherwise is immaterial, the quantum of Harper's proof negated the defense: The second printer produced 650 acceptable posters and could produce the balance of the order.

Printers next claims that Harper failed to promptly reject the posters when they were delivered, therefore accepting them. Harper did not reject the posters in writing within 3 days as required by the writing on the back of the delivery slip. Nonetheless, the trial court was correct in ruling that Harper timely revoked acceptance. RCW 62A.2–608 states:

(1) The buyer may revoke his acceptance of a lot or commercial unit whose non–conformity substantially impairs its value to him if he has accepted it

(a) on the reasonable assumption that its non–conformity would be cured and it has not been seasonably cured; or

(b) without discovery of such non–conformity if his acceptance was reasonably induced either by the difficulty of discovery before acceptance or by the seller's assurances.

(2) Revocation of acceptance must occur within a reasonable time after the buyer discovers or should have discovered the ground for it and before any substantial change in condition of the goods which is not caused by

their own defects. It is not effective until the buyer notifies the seller of it.

(3) A buyer who so revokes has the same rights and duties with regard to the goods involved as if he had rejected them.

■ Although the boilerplate on the back of the delivery slip is in favor of Printers, there is no indication it was ever part of the agreement of the parties. The UCC is concerned with the agreement in fact of the parties, not unbargained for boilerplate which vitiates both the understanding of the parties and commercial standards of reasonableness. RCW 62A.1–201(3) states:

"Agreement" means the bargain of the parties in fact as found in their language or by implication from other circumstances including course of dealing or usage of trade or course of performance as provided in this Title (RCW 62A.1–205 and RCW 62A.2–208). Whether an agreement has legal consequences is determined by the provisions of this Title, if applicable; otherwise by the law of contracts (RCW 62A.1–103). (Compare "Contract".)

The trial court had before it the unchallenged testimony that Harper orally notified Printers within 2 days of receipt of the goods of problems with the posters. This was consistent with their past course of dealing and with commercial standards of reasonableness. Finally, it would be ironic and improper under RCW 62A.2–608(2) to hold that Harper's failure to provide written notice within 3 days is fatal where Printers was continually late in its deliveries of the nonconforming goods.

We next review Printers' contention that Harper is not entitled to consequential damages under RCW 62A.2–715(2)(a) because there was insufficient proof of mitigation. The remedies of the buyer in a sales contract are set forth at RCW 62A.2–711 through .2–716. These are subject to the UCC's underlying policy stated in RCW 62A.1–106(1):

The remedies provided by this Title shall be liberally administered to the end that the aggrieved party may be put in as good a position as if the other party had fully

performed but neither consequential or special nor penal damages may be had except as specifically provided in this Title or by other rule of law.

The aggrieved party has a good faith obligation to minimize damages, *see* RCW 62A.1–203, .2–706(1), .2–712(2), .2–713(1), and .2–715(2)(a). These provisions merely make more specific the common law requirements regarding mitigation of damages.

The UCC permits the buyer to recover consequential damages for the seller's breach, including

> any loss resulting from general or particular requirements and needs of which the seller at the time of contracting had reason to know and which could not reasonably be prevented by cover or otherwise;

RCW 62A.2–715(2)(a). Official Comment 2 to this section provides in relevant part:

> Subsection (2) operates to allow the buyer, in an appropriate case, any consequential damages which are the result of the seller's breach. . . . Although the older rule at common law which made the seller liable for all consequential damages of which he had "reason to know" in advance is followed, the liberality of that rule is modified by refusing to permit recovery unless the buyer could not reasonably have prevented the loss by cover or otherwise. Subparagraph (2) carries forward the provisions of the prior uniform statutory provision as to consequential damages resulting from breach of warranty, but modifies the rule by requiring first that the buyer attempt to minimize his damages in good faith, either by cover or otherwise.

In this case there is no dispute that Printers knew of the particular requirements and needs of Harper at the time of contracting. Printers' entire argument is that Harper did not make any attempts to replace the postcards and carry through the portion of its marketing scheme which called for sales of posters to other galleries throughout the country for $12.50 each.

As indicated in Official Comment 2 to RCW 62A.2–715, quoted above, the efforts at mitigation must be reasonable and in good faith, and may be made by cover or

other means. In this jurisdiction the burden of proof as to mitigation of damages is on the party asserting the requirement. Printers is required to prove that damages were not mitigated or insufficiently so. *Sutton v. Shufelberger,* 31 Wn. App. 579, 582, 643 P.2d 920 (1982).[2] That burden shifts once the opposing party shows that the injured party had alternatives open to it which would have minimized damages. *Young v. Whidbey Island Bd. of Realtors,* 96 Wn.2d 729, 734, 638 P.2d 1235 (1982); *Smith v. King,* 106 Wn.2d 443, 722 P.2d 796 (1986). In this case Printers never demonstrated that Harper had alternatives available.

■ Printers last claims that there is not sufficient evidence to support the award of damages for lost profits. Lost profits may be a proper form of consequential damages under RCW 62A.2–715. *See Sprague v. Sumitomo Forestry Co.,* 104 Wn.2d 751, 761, 709 P.2d 1200 (1985) (distinguishing consequential and incidental damages). Official Comment 4 to RCW 62A.2–715 states:

> The burden of proving the extent of loss incurred by way of consequential damage is on the buyer, but the section on liberal administration of remedies rejects any doctrine of certainty which requires almost mathematical precision in the proof of loss. Loss may be determined in any manner which is reasonable under the circumstances.

This is consistent with prior case law which holds that "lost profits must be proved with reasonable certainty; damages which are remote and speculative cannot be recovered." (Citations omitted.) *O'Brien v. Larson,* 11 Wn. App. 52, 54, 521 P.2d 228 (1974). Evidence of the loss is sufficient if it is the best available evidence and "affords a reasonable basis for estimating the loss." *Barnard v. Compugraphic Corp.,* 35 Wn. App. 414, 418, 667 P.2d 117 (1983); *Kwik–Lok Corp. v. Pulse,* 41 Wn. App. 142, 150, 702 P.2d 1226 (1985). Damages may be computed from the range of evidence in the discretion of the trial court. *Barnard; Kwik–Lok.*

In this case the trial court accepted Harper as an expert

---

[2]The initial burden of proving the extent of loss remains on the buyer. *See* RCW 62A.2–715 & Official Comment 4.

witness for an estimate of the amount of poster sales which would have occurred at the opening of the show had the posters been available. The evidence supporting lost profits for the remaining posters is that Harper was able to sell the remaining lot of posters to a local wholesaler, who would in turn sell them to galleries at the $12.50 price, indicating that they do have the value assigned. Under the deferential standards stated in *Barnard* and *Kwik–Lok,* and under Official Comment 4 to RCW 62A.2–715, the question of whether the posters would have been sold to other galleries is not too speculative. There is a proper basis for estimating the full measure of lost profits. The award of lost profits will be affirmed.

The trial court erred in awarding Printers an offset in the amount of $1,150 for damage to the posters. Because of the somewhat unique situation in this case involving copyright, the posters have no salable use to Printers other than as scrap material. *See* 17 U.S.C. § 106(3) (the copyright holder has the exclusive right to distribute copies of protected work to the public by sale or otherwise); 17 U.S.C. § 301(a) (state law preempted). Since there is no evidence in the record which would provide a basis for calculating the salvage value of the posters, there is no basis for calculating any offset. The offset award is therefore vacated.

Finally, the award of lost profits must be modified to reflect the cost of mailing the postcards to the 2,000 galleries. Based on the postage rate of 13 cents per postcard in November 1981, of which we may take judicial notice, ER 201, the damages awarded to Harper shall be reduced by $260. In all other respects the judgment of the trial court is affirmed.

RINGOLD, A.C.J., and SWANSON, J., concur.

Review denied by Supreme Court March 31, 1987.