OPINION OF THE COURT
Diane A. Lebedeff, J.
Following a jury trial on a claim that the defendant, a sports car dealer, repudiated plaintiff’s contract to purchase a rare Astin-Martin automobile, plaintiff moves for judgment on its alternative request for monetary specific performance in the form of a judgment approximately 10 times greater than the breach of contract damages awarded by the jury. In opposition, defendant moves to set aside the breach of contract jury verdict in favor of plaintiff. Both motions are consolidated for purposes of this decision.
Because the complaint presented a mixture of legal and equitable claims, a single trial was held with jury consideration limited to issues related to the legal claim (see, Cowper Co. v Buffalo Hotel Dev. Venture, 99 AD2d 19, 23 [4th Dept 1984]; Vinlis Constr. Co. v Roreck, 23 AD2d 895, 896 [2d Dept 1965]). On one factual issue relevant to the equitable claim, the uniqueness of the vehicle, the jury was instructed on the applicable law and issued an advisory verdict. The jury found, on the facts, that the automobile was unique.
I
The attack on the verdict requires an amplification of the underlying facts. In the summer of 1987, plaintiff looked for a sports car to purchase for interim personal use and to sell when the price rose (a practice in which he had previously engaged). The defendant had in his inventory the subject 1965 DB5 Astin-Martin convertible with left-hand drive. Plaintiff learned this particular model was one of only 20 in existence, *121 with only 40 having been made, although those 20 cars seem to turn over with more frequency than their number might suggest. Plaintiff testified he thought the car was undervalued, based upon his knowledge of sports car prices, and anticipated a price rise. A contract of sale was reached with a purchase price of $40,000, with plaintiff depositing $5,000.
The commercial agreement proceeded to unwind thereafter. The dealer could not obtain the title documents from the wholesaler from whom he had agreed to purchase the vehicle; the deposition testimony of the out-of-State wholesaler was read into evidence and confirmed that the title had been misplaced. The defendant did not transmit this explanation to plaintiff, but instead told a story about problems of getting title from a different individual. In August of 1987, the defendant attempted to return the deposit, but advised that he would continue to try to resolve the title problems. Plaintiff pursued the purchase until, ultimately, in December of 1987, plaintiffs lawyer wrote defendant that the contract had been breached and plaintiff would commence litigation. However, no further action was taken by plaintiff until this case was commenced in 1989, four months after defendant sold the car.
There was no dispute that the contract had been canceled. It was agreed that contract damages were to be given to the jury under the standard of UCC 2-713, applicable to a buyer who does not cover: the difference between the market price when the buyer learned of the breach, and the contract price. The jury did not accept the defendant’s claim that he could not deliver title, which would have excused his performance under the concept of "commercial impracticability” and the defendant does not challenge this aspect of the jury verdict.
The jury fixed plaintiffs knowledge of the breach as the time his attorney announced it, and did not accept plaintiffs insistence that the contract remained in effect thereafter. Given the continued assurances of defendant that he would pursue title, which proved to be a hollow promise, it was a fair view of the evidence that plaintiff could no longer claim ignorance of breach after his attorney proclaimed one.
The jury concluded that the market price had increased $20,000 by December, which defendant urges is unsupported. The jury was presented with evidence that the price remained basically flat at $40,000 throughout 1987, and by January of 1988 was in a range from $70,000 to $100,000. The jury clearly rejected the proposition that there was no upward *122 curve in value toward the end of 1987. Accordingly, as of December of 1987, $60,000 was a fair and logical assessment of the value of the car and the jury, as it was instructed to do, deducted from the value the purchase price of the car, to reach an award of $20,000.
Plaintiff’s final protest is that there was no specific car on the market in December of 1987. It cannot be ignored that the evidence before the jury fully portrayed an intimate community of Astin-Martin enthusiasts, linked by membership in an Astin-Martin club and supported by an Astin-Martin speciality dealer located in New Jersey. The jury’s verdict is soundly premised on the conclusion that, had plaintiff attempted to offer to purchase a comparable Astin-Martin within this community, one would have surfaced with a price of $60,000. After all, the same seller who sold a vehicle in January would only have to be lured into the market a month earlier, somewhat before the market price ascent.
The court must "afford * * * great deference to the fact-finding function of the jury” (Martin v McLaughlin, 162 AD2d 181, 184 [1st Dept 1990]). Defendant here does not show, to the satisfaction of the court, that the verdict does not "fairly reflect[ ] the evidence in the case” (Niewieroski v National Cleaning Contrs., 126 AD2d 424 [1st Dept 1987]). Further, although some mention was made that plaintiff had other incidental damages, such as attempting to trace the title, these expenses were not quantified for the jury although, if advanced, they might have been proper incidental or consequential damages (UCC 2-715).
On the basis of this record, the court finds that defendant has failed to sustain his attack on the verdict.
II
The request for specific performance raises a novel issue under the Uniform Commercial Code concerning entitlement to specific performance of a contract for the sale of unique goods with a fluctuating price. Section 2-716 (1) of the Uniform Commercial Code, which is controlling, provides that "[specific performance may be decreed where the goods are unique or in other proper circumstances.” The jury’s advisory determined that the Astin-Martin car at issue was unique.
As noted above, the car was sold prior to the commencement of this litigation for a price of $185,000 more than the $40,000 contract price, and plaintiff requests that he be *123 granted specific performance in the form of a constructive trust impressed upon the proceeds of sale, plus interest from the date of sale. As it developed, the defendant had not sold at the "top of the market,” which peaked in July of 1989, approximately two years after the original contract, when the car had a value of $335,000, which was $295,000 over the contract price. Thereafter, collectible automobile values slumped and the sale price of a comparable Astin-Martin vehicle by January of 1990 was $225,000 and, by the time of trial, was $80,000.
Clearly, plaintiffs request for an award of specific performance monetary damages is legally cognizable, for every object has a price and even rare goods are subject to economic interchangeability (Van Wagner Adv. Corp. v S & M Enters., 67 NY2d 186, 191-194 [1986]; compare, no other opportunity, Triple-A Baseball Club Assocs. v Northeastern Baseball, 832 F2d 214 [1st Cir 1987]). Plaintiff urges that specific performance is particularly appropriate here for UCC 2-716 has been viewed as a statute enacted to liberalize the availability of specific performance of contracts of sale as a buyers’ remedy (Ruddock v First Natl. Bank, 201 Ill App 3d 907, 914, 559 NE2d 483 [1990]; Chadwell v English, 652 P2d 310 [Okla 1982]; Tower City Grain Co. v Richman, 232 NW2d 61 [Sup Ct, ND 1975]). Nonetheless, this change does not lessen the UCC’s "emphasis on the commercial feasibility of replacement” as the most desirable approach (UCC 2-716, Comment 2), nor does it mean that typical equitable principles are inapplicable to consideration of the remedy (Massey v Hardcastle, 753 SW2d 127 [Tenn 1988]).
However, both on the facts and the law, the court determines that, if equitable monetary damages are to be awarded here, that award must be based upon value at the time of trial, rather than on an earlier valuation. Traditionally, equity "give[s] relief adapted to the situation at the time of the decree” (Union Bay & Paper Co. v Allen Bros. Co., 107 App Div 529, 539 [3d Dept 1905]; Schaefer v Fisher, 137 Misc 420, 423 [Sup Ct, NY County 1930]). This position is consistent with the explicit goal of the Uniform Commercial Code that its remedies are to "be liberally administered to the end that the aggrieved party may be put in as good a position as if the other party had fully performed” (UCC 1-106 [1]), which, in the case of specific performance, has lead to confining the remedy to restoration of the equivalent of the subject goods to a plaintiffs possession (see, Dexter Bishop Co. v Redmond & *124 Son, 58 AD2d 755 [1st Dept 1977]). Here, if plaintiff were to be awarded enough to be able to acquire another Astin-Martin at current prices, he would achieve the requisite equivalent.
Plaintiff has fervently, but ultimately unconvincingly, argued that the larger amount is his due. While every litigant wishes to gain a maximum economic benefit, a court of equity should not grant an award which would be " 'disproportionate in its harm to defendant and its assistance to plaintifF ” (Van Wagner Adv. Corp. v S & M Enters., supra, 67 NY2d, at 195, quoting Matter of Burke v Bowen, 40 NY2d 264, 267 [1976]). On the plaintiff’s side of this equation, a higher award would give plaintiff more than the current equivalent of the automobile. On the defendant’s side, the court found credible the dealer’s testimony that he put the funds derived from the sale into his stock, which then decreased in value in the same measure as the car in question, so that a higher award would cause a disproportionate harm. This testimony was uncontroverted by plaintiff and it was undisputed that neither party saw a rise in price of the dimensions present here. The court rejects the request for monetary specific performance to the extent that more than the current market price is sought.
This conclusion limits the debate to the current price of the automobile, which is approximately $40,000 more than the contract price. As to interest in an equitable matter, generally, where damages are fixed as of the date of trial, interest is to commence as of the date judgment is entered, although the court must consider the facts of the case in determining the calculation of interest (Begen v Pettus, 223 NY 662 [1918]; see, e.g, Frey Realty Co. v Ten W. 46th St. Corp., 1 Misc 2d 371 [Sup Ct, NY County 1955, Tilzer, J.]). There is a certain factual irony in that, by reason of market factors, the contract remedy plus interest would result in a specific performance monetary damages award only somewhat short of the current price.
The issue of monetary specific performance remains, despite this conclusion, because such an award would be somewhat higher than the contract measure of damages. Plaintiff’s position that specific performance must follow a determination that an object is "unique” misperceives the law.
First, specific performance rests upon the discretion of the trial court, reviewable under an abuse of discretion standard (Van Wagner Adv. Corp. v S & M Enters., supra, 67 NY2d, at 192). The use of a permissive "may” in the text of UCC 2-716 *125 does not modify that standard in any way or change the accepted concept, as set forth in Da Silva v Musso (53 NY2d 543, 547 [1981]), that specific performance may be declined if it is concluded such relief "would be a 'drastic’ or harsh remedy.” It should be noted in relation to price fluctuations that even an extreme rise in price is an insufficient reason, as a matter of law, to decline to consider this equitable remedy (Willard v Tayloe, 75 US 557 [1869]), but, on the other hand, neither does a mere "increase in the cost of a replacement * * * merit the remedy” (Klein v PepsiCo, Inc., 845 F2d 76, 80 [4th Cir 1988], citing Hilmor Sales Co. v Neuschalfer Div. of Supronics Corp., 6 UCC Rep Serv 325 [Sup Ct, Queens County 1969]).
Second, a factual determination that an object is "unique,” as the jury determined here in an advisory verdict, is an ingredient which has the greatest significance when an action for specific performance is commenced immediately after the breach, and is more complex when other factors or delays are present. In cases concerning the sale of goods promptly commenced after the breach, specific performance is frequently granted and turns primarily upon uniqueness (see, Schweber v Rallye Motors, NYLJ, Aug. 10, 1973, at 12, col 5, 12 UCC Rep Serv 1154 [Sup Ct, Nassau County 1973], a Rolls-Royce Cor-niche, 100 sold each year in the United States, unique; Sedmak v Charlie’s Chevrolet, 622 SW2d 694 [Mo 1981], new "Indy 500 Pace Car” Corvette unique; Copylease Corp. v Memorex Corp., 408 F Supp 758 [SD NY 1976], quality of chemicals unique; compare, Klein v PepsiCo, Inc., supra, three comparable airplanes for sale within limited period of time, not unique; Scholl v Hartzell, 20 Pa D & C 3d 304 [Ct Common Pleas 1981], 1962 Corvette not unique; Pierce-Odom, Inc. v Evenson, 5 Ark App 67, 632 SW2d 247 [1982], mobile home not unique).
Once beyond this simple factual threshold, under New York law, "uniqueness” must be considered as it bears upon the adequacy of the legal remedy (Van Wagner Adv. Corp. v S & M Enters., supra, 67 NY2d, at 193). It is noted that not all jurisdictions take this view (see, King Aircraft Sales v Lane, 68 Wash App 706, 712, 846 P2d 550 [1993], reciting a split of authority on this point).
With the passage of time, specific performance becomes disfavored. For example, because goods are subject to a rapid change in condition, or the cost of maintenance of the goods is important, time may be found to have been of the essence, *126 and even a month’s delay may defeat specific performance (see, delayed transfer of cattle, Ziebarth v Kalenze, 238 NW2d 261 [ND 1976]; Putnam. Ranches v Corkle, 189 Neb 533, 203 NW2d 502 [1973]), notwithstanding that risk of loss under title concepts is generally irrelevant under the UCC, which considers whether an item has been identified to a contract (see, Tatum v Richter, 280 Md 332, 336-337, 373 A2d 923 [1977], replevin of a Ferrari; William F. Wilke, Inc. v Cummins Diesel Engines, 252 Md 611, 250 A2d 886 [1969]). Even absent such special circumstances, with a greater delay, where a defendant has changed position or taken any economic risk, the court may conclude that "the plaintiff will lose nothing but an uncontemplated opportunity to gather a windfall” (Concert Radio v GAF Corp., 108 AD2d 273, 278 [1st Dept 1985], affd 73 NY2d 766 [1988]). Particularly where some other transactions are available, it has been held that a " 'customer [for resale] may not * * * refuse to cover * * * and thereby speculate on the market entirely at the risk of the [defendant]’ ” (Saboundjian v Bank Audi [USA], 157 AD2d 278, 284 [1st Dept 1990], referring in part to UCC 1-106 which limits damages under UCC 2-713 to a buyer’s expected profit where the purchase is for resale, quoting Brown v Pressner Trading Corp., 101 AD2d 761, 762 [1st Dept 1984]).
Turning to the facts in the instant case, the plaintiff did not sue in December of 1987, when it is likely a request for specific performance would have been granted. At that point, the defendant had disclaimed the contract and plaintiff was aware of his rights. The plaintiff was not protected by a continued firm assurance that defendant definitely would perfect the car’s title (see, Telmark, Inc. v Ayers, 80 AD2d 698 [3d Dept 1981]), and it was established that New York is an automobile "title” State, so that title is a specific impediment upon which complete legal possession must turn (compare, lease to be effective only upon lessor obtaining title, 7 Doyer St. Realty Corp. v Great Cathay Dev. Corp., 39 AD2d 896 [1st Dept 1972]). The court does not accept plaintiff’s protest that he believed the commercial relationship was intact; the parties had already had a heated discussion and were communicating through attorneys. A more likely explanation of plaintiff’s inaction is that he proceeded to complete the purchase in April of 1988 of Ferrari Testarrosa for $128,000 and a Lamborghini for $40,000 in 1989.
In short, the plaintiff abandoned any active claim of con *127 tract enforcement by late spring of 1988. Moreover, to the extent that his two sports cars constituted "cover,” he did not present any evidence as to his treatment of those cars such that the court could evaluate damages or quantify what profits he expected to make on the Astin-Martin which he regarded, in significant part, as a business transaction (compare, Fertico Belgium v Phosphate Chems. Export Assn., 70 NY2d 76 [1987]; Harper & Assocs. v Printers, Inc., 46 Wash App 417, 730 P2d 733 [1986]). Finally, the court determines, as a matter of credibility, that plaintiff would not have pursued this matter had the price fallen below the contract price.
On this point, it is helpful to note that the initial burden of proving the proper remedy remains on the buyer (UCC 2-715, Comment 4). In this instance, plaintiff’s very attempt to prove qualifiable special performance damages has also proved: (a) the value of the disputed automobile was readily established by expert sources; (b) the adequacy of legal contract damages; and (c) the availability of "a substitute transaction [which] is generally a more efficient way to prevent injury than is a suit for specific performance * * * [and gives] a sound economic basis for limiting the injured party to damages” (see, Restatement [Second] of Contracts § 360, comment c).
In closing, the court does not fault plaintiff for his valiant attempt to reach for a higher level of damages. As two leading commentators have pointed out, in relation to the use of uniqueness as a basis for specific performance, the "exact dimensions [of the concepts] are not fully known” (3A Hawk-land & Miller, UCC Series § 2A-52D03 [1993]). If only in the interest of commercial certainty, there is great wisdom in a rule of thumb that "uniqueness continues to cover one-of-a-kind goods and items of special sentimental value, [and] goods that have particular market significance, such as goods covered by an output contract or which are being specially manufactured” (ibid.; nn omitted).
After full consideration of these factors, the court is satisfied that it would be inequitable and improper to grant specific performance in the form of a constructive trust upon the proceeds of sale.
Accordingly, the motion to fix the specific performance damages and the motion to vacate the jury verdict are denied.