Timothy MELLON, Plaintiff,

v.

The CESSNA AIRCRAFT COMPANY, Defendant.

No. 96–1454–JTM.

United States District Court, D. Kansas.

Dec. 2, 1998.

Daniel D. Crabtree, Stinson, Mag & Fizzell, P.C., Overland Park, KS, John H. Broadley, David A. Handzo, Steven N. Berk, Thomas D. Amrine, Jenner & Block, Washington, DC, for Timothy Mellon.

P. John Owen Morrison & Hecker L.L.P., Kansas City, MO, John C. Nettels, Jr., Morrison & Hecker L.L.P., Wichita, KS, Michael E. Tucci, Morrison & Hecker L.L.P., Washington, DC, for Cessna Aircraft Co.

## MEMORANDUM ORDER

MARTEN, District Judge.

Timothy Mellon brought this action against The Cessna Aircraft Company ("Cessna") alleging violations of Sections 1 and 2 of the Sherman Antitrust Act, 15 U.S.C. §§ 1 and 2, and breach of an oral contract by Cessna. The parties have filed cross-motions for summary judgment on Count III, Mellon's breach of contract claim. For the reasons set forth below, Mellon's cross-motion for summary judgment on Count III is granted and Cessna's renewed motion for summary judgment on Count III is denied.[1]

### I. Background.

Mellon purchased a used Citation I (Model 501SP) on or about May 9, 1989. The Citation I is a business jet that has the capability of being flown by a single pilot. Cessna manufactures a variety of business jets, including the Model 501SP owned by Mellon.[2] In addition to manufacturing aircraft, Cessna has nine service centers throughout the United States.[3]

From the time Mellon bought his airplane in 1989 until September 1995, he routinely took his airplane to Cessna for major maintenance and FAA-required "phase inspections." Occasionally, Mellon took his airplane to other service centers for minor repairs or maintenance. He also sought service at other service centers when the location of his airplane made it difficult for him to obtain service from a Cessna-owned service center. However, Cessna's New York Citation Service Center was his primary service provider.

---

1. The parties previously filed cross-motions for summary judgment on Count III. The court denied both motions because the parties failed to brief the issue of which jurisdiction's substantive law applies to Mellon's contract claim. *Mellon v. The Cessna Aircraft Co.,* 7 F.Supp.2d 1180, 1183 (D.Kan.1998). The parties have since briefed the issue and agree that New York substantive law controls. The court agrees with this determination.

2. Cessna no longer manufactures the Citation I. It now manufactures the Model 525, also known as the "CitationJet."

3. In 1995, Cessna had eight service centers. In addition, Cessna has licensed seven independently owned servicers of jet aircraft in North America as "Cessna-authorized" service centers, and there are at least 70 fixed base operators that the Federal Aviation Administration ("FAA") has certified for servicing Cessna jets in the United States.

Shortly after purchasing his airplane, Mellon considered adding a modification that would increase its range, specifically an additional fuel tank manufactured and installed by Branson Aircraft. Before arranging for this modification, Mellon asked Cessna if installing the modification would jeopardize his ability to receive service from Cessna. Cessna assured him that it would not and agreed to service the modified aircraft. As of 1992, Cessna continued to honor that agreement.

In the spring of 1992, Mellon contemplated purchasing another modification for his Citation, the Eagle 400. The Eagle 400 is manufactured and installed by Sierra Industries, Inc. It alters an aircraft's wings and replaces its engines, resulting in faster climb, higher speed, and greater range. Before purchasing the modification, Mellon asked Charles Knapp, the acting general manager of the Cessna-owned service center in Newburgh, New York, if Cessna would continue to perform major maintenance and phase inspections on his airplane if he were to purchase the modification. Knapp informed Mellon he would have to consult with Cessna management in Wichita, Kansas, before he could commit to servicing Mellon's aircraft equipped with an Eagle 400 modification. Subsequently, Knapp told Mellon that Cessna would continue to service his aircraft once he installed the Eagle 400 modification, excluding, however, any maintenance on parts that were added in the modification. As to those parts, Knapp advised Mellon that he would have to return the airplane to Sierra for service.

Once Knapp assured Mellon that Cessna would continue to service his airplane, with the exceptions noted above, Mellon purchased the modifications and had them installed on his airplane at a cost of approximately $1.2 million. For over two years, Cessna stood by its agreement and the parties' business relationship continued. However, on September 22, 1995, Cessna issued Service Letter SL500–03–01 ("the Service Letter") to all owners of Citations equipped with modifications similar to Mellon's. The Service Letter stated that Cessna would no longer perform certain maintenance, including major phase inspections. As justification for issuing the Service Letter, Cessna cites its concerns about its ability to safely and adequately provide service and maintenance to substantially modified airplanes for which it did not have the underlying engineering and performance data.

As a result of Cessna's decision to cease providing service and maintenance to Mellon's modified aircraft, Mellon claims he is unable to operate his aircraft with the same level of confidence in its airworthiness and safety that he had when his airplane was serviced by Cessna. He claims no amount of money can compensate him for his loss and seeks the service Cessna previously promised and provided. Cessna contends that if Mellon is entitled to any remedy, it would be damages equal to any diminished value of his Citation I as the result of the issuance of the Service Letter.

## II. Summary Judgment Standards.

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The initial burden is on the moving party to show that there is an absence of evidence to support the nonmoving party's case and that it is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–25, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the initial showing has been made, the burden shifts to the nonmoving party to designate specific facts showing there is a genuine issue for trial. *Id.* at 324, 106 S.Ct. 2548.

## III. Promissory Estoppel.

■ Mellon's breach of contract claim is based on the doctrine of promissory estoppel. In New York, promissory estoppel consists of three elements: (1) a clear and unambiguous promise; (2) a reasonable and foreseeable reliance by the party to whom the promise is made; and (3) an injury sustained by the party asserting the estoppel by reason of his reliance. *Ripple's of Clearview, Inc. v. Le Havre Associates*, 88 A.D.2d 120, 452 N.Y.S.2d 447, 449 (N.Y.App.Div.1982).

■ Mellon has established each of the three elements of promissory estoppel. First, there was a clear and unambiguous promise by Cessna to perform maintenance and phase inspections on Mellon's modified aircraft. The parties' factual stipulations in the final pretrial order illustrate the contents of that agreement:

> Knapp advised Mellon that Cessna would *continue* to perform maintenance on his aircraft after the installation of the Eagle 400 modification, excluding, however, any maintenance on parts that were added in the modification. As to such parts, Knapp advised Mellon that he would have to take the plane back to Sierra for service. Knapp otherwise did not specify the type of maintenance work which Cessna would or would not provide to Mellon.

Final Pretrial order, at 15 (emphasis added). Knapp's use of the word "continue" indicates Cessna would provide the same service to the modified aircraft as it did before Mellon added the modification, which included major maintenance and phase inspections.

Second, it was reasonable and foreseeable that Mellon would purchase and install the Eagle 400 based on Cessna's assurance of continued service. Before purchasing the fuel tank modification, Mellon sought and obtained Cessna's assurance it would continue to service his Citation with the modification. Cessna honored this promise. Therefore, in 1992, when Cessna agreed to continue to service Mellon's aircraft if he installed the Eagle 400 modification, Mellon had no reason to doubt Cessna's commitment.

In addition, Mellon's reliance on Cessna's promise was reasonable because of Knapp's actions in making the agreement. Knapp did not automatically agree to continue to service Mellon's airplane with the Eagle 400 modification. Instead, he first consulted with management at the Cessna headquarters in Wichita before making a commitment. With management's approval, he then informed Mellon of the conditions of Cessna's agreement to continue to provide service on Mellon's aircraft with the Eagle 400 modification.

It also was foreseeable Mellon would purchase the Eagle 400 modification in reliance on Cessna's promise to continue service. Cessna had upheld its previous promise to continue servicing Mellon's aircraft when he bought the fuel tank modification. Mellon had no reason to believe Cessna would not continue to stand by its agreement to continue servicing his aircraft with the Eagle 400 modification.

Third, Mellon has suffered injury as a result of his reliance on Cessna's promise to continue servicing his aircraft after he installed the Eagle 400 modification. Mellon can no longer obtain the service he so highly values at Cessna-owned service centers. The confidence he once had in the airworthiness and safety of his Citation no longer exists.

Cessna contends the oral agreement is barred by the New York Statute of Frauds, which provides:

> Every agreement, promise or undertaking is void, unless it or some note or memorandum thereof be in writing, and subscribed by the party to be charged therewith, or by his lawful agent, if such agreement, promise or undertaking:
>
> > 1. By its terms is not to be performed within one year from the making thereof or the performance of which is not to be completed before the end of a lifetime....

N.Y.Gen.Oblig.Law § 5–701(a)(1) (McKinney 1998).

■ There are various circumstances in which parties may avoid application of the Statute of Frauds. One way to avoid application of the Statute is by establishing a promissory estoppel claim. New York courts have determined that promissory estoppel may bar application of the Statute of Frauds if the circumstances are so "egregious as to render the application of the Statute of Frauds unconscionable." *Yedvarb v. Yedvarb*, 237 A.D.2d 433, 655 N.Y.S.2d 84, 85 (N.Y.App.Div.1997).

■ The court finds that the circumstances of this case meet the criteria set forth by New York courts and that the Statute of Frauds shall not bar Mellon's claim against Cessna. Mellon spent $1.2 million on a modification to his airplane in reliance on

Cessna's promise of continued service. Cessna upheld its promise for over two years. In light of Cessna's prior history in servicing Mellon's modified aircraft, it would be unconscionable for Cessna to suddenly refuse service to Mellon, especially since Mellon would not have purchased the expensive modification had Cessna not promised continued service.

## IV. Specific Performance.

■■■ "Specific performance is an equitable remedy and the power of equity is as broad as equity and justice require." *Buteau v. Biggar*, 65 A.D.2d 652, 409 N.Y.S.2d 451, 453 (N.Y.App.Div.1978) (citation omitted). The court has broad discretion in determining whether to grant specific performance. *Bander v. Grossman*, 161 Misc.2d 119, 611 N.Y.S.2d 985, 989 (N.Y.Sup.1994). In making its decision, the court considers all of the circumstances of the case. *Barnosky v. Petteys*, 49 A.D.2d 134, 373 N.Y.S.2d 674, 676 (N.Y.App.Div.1975). A party's right to specific performance is not automatic. *Pecorella v. The Greater Buffalo Press, Inc.*, 107 A.D.2d 1064, 486 N.Y.S.2d 562, 563 (N.Y.App. Div.1985). The court may grant specific performance when the remedy at law is inadequate. *Id.* The party seeking specific performance must come to the court with clean hands. *Id.*

■■■ Specific performance should not be granted where it would cause unreasonable hardship or injustice to a party, even if that party is the one who has breached the contract. *Concert Radio Inc. v. GAF Corp.*, 108 A.D.2d 273, 488 N.Y.S.2d 696, 699 (N.Y.App. Div.1985). In determining whether unreasonable hardship exists, the court must look not only to the detriment that the defendant would endure but must also look to the value of the performance to the plaintiff. *Id.* at 699–700. "If the hardship to the defendant is disproportionate to the value of the performance sought by the plaintiff, specific performance should be denied." *Id.* at 700. *See also Bander*, 611 N.Y.S.2d at 989. However, equity will not relieve parties from a bargain simply because it is unreasonable or unprofitable. *Khayyam v. Diplacidi*, 167 A.D.2d 300, 562 N.Y.S.2d 43, 44 (N.Y.App.Div.1990).

■■ The court finds Mellon is entitled to specific performance of his agreement with Cessna. The injury he has sustained is the lack of security he feels from obtaining major repairs and phase inspections from Cessna, an injury that cannot be addressed through the payment of money damages. This should not impose an unreasonable burden upon Cessna in light of its prior compliance with its agreement to provide maintenance and phase inspections on Mellon's modified aircraft. Any hardship Cessna may suffer in performing its agreement is not disproportionate to the value of the service Mellon seeks.

## V. Mellon's Motion to Dismiss Counts I and II Without Prejudice and the Court's Rule 54(b) Certificate of Appealability.

■■ Because of the court's decision to grant specific performance on his contract claim, Mellon has filed a motion to dismiss his antitrust claims (Counts I and II of his complaint) without prejudice. Cessna does not object to the court dismissing Counts I and II, provided the court issues a certificate of appealability, pursuant to Fed.R.Civ.P. 54(b).

There are three prerequisites for issuing a Rule 54(b) certificate, and the court finds that all three have been met. 10 Wright, Miller & Kane, *Federal Practice and Procedure* § 2656 (3d ed.1998). First, this case involves multiple claims. Second, at least one of these claims, the contract claim, has been finally decided. Third, there is no just reason for delaying an appeal on this issue. Therefore, the court finds that a Rule 54(b) certificate is appropriate, and the parties may proceed with the appellate process. Because of the court's decision to issue a Rule 54(b) certificate, Mellon's motion to dismiss Counts I and II without prejudice is granted.

## VI. Pending Motions.

The following motions are still pending: Mellon's motion in limine to exclude evidence relating to the safety of Cessna model 500/501; Cessna's motion to exclude certain testimony by Charles Oliver, II; Cessna's

objections to Mellon's witness and exhibit lists; Cessna's motion to quash trial subpoena on Gary Hay; and Cessna's motion for leave to allow the jury to view mock-ups of Cessna Citation Airplanes. In light of the court's decision to grant Mellon's motion for summary judgment on Count III and because of Mellon's decision to dismiss Counts I and II without prejudice, the above, pending motions are denied as moot.

IT IS THEREFORE ORDERED this 2d day of December, 1998, that Mellon's cross-motion for summary judgment on Count III (dkt. no. 122) is granted. The court directs entry of judgment consistent with this order. IT IS FURTHER ORDERED that Cessna's renewed motion for summary judgment on Count III (dkt. no. 117) is denied; Mellon's motion to dismiss Counts I and II without prejudice (dkt. no. 143) is granted; Mellon's motion in limine to exclude evidence relating to the safety of Cessna model 500/501 (dkt. no. 101) is denied as moot; Cessna's motion to exclude certain testimony by Charles Oliver, II (dkt. no. 109) is denied as moot; Cessna's objections to Mellon's witness and exhibits list (dkt. no. 113) are denied as moot; Cessna's motion to quash trial subpoena on Gary Hay (dkt. no. 126) is denied as moot; and Cessna's motion for leave to allow the jury to view mock-ups of Cessna Citation Airplanes (dkt. no. 135) is denied as moot.