[No. 4968–0–III.   Division Three.   July 21, 1983.]

ERIC BARNARD, ET AL, *Respondents,* v. COMPUGRAPHIC
CORPORATION, *Appellant.*

*Alan D. Campbell* and *Velikanje, Moore & Shore,* for appellant.

*Robert C. Tenney, Alan A. McDonald,* and *Halverson, Applegate & McDonald,* for respondents.

GREEN, J.—On April 18, 1978, Mr. and Mrs. Barnard, who owned a commercial printing business, contracted with Compugraphic Corporation to purchase a typeset machine—the EditWriter 7500. This action was brought by the Barnards against Compugraphic for damages due to malfunctioning of the EditWriter and two replacement machines. After a bench trial, the court awarded damages to the Barnards, finding Compugraphic breached implied and express warranties and negligently misrepresented the capability, suitability, reliability, serviceability, and profitability of the EditWriter. Both parties appeal from that award.

The record shows the Barnards agreed to purchase the EditWriter on representations that it had several timesaving features over the machines they had previously been using; it was designed to compose, store and produce typeset material. The machine consisted of a video terminal containing a keyboard programmer and a viewing screen which could display up to 6,000 characters, and a photo unit. Additionally, it had the capacity to store jobs, which the Barnards anticipated would be reordered, on "floppy disks" each of which held up to 300,000 characters. An unchallenged finding states:

The purpose of the memory facility was to allow plaintiffs to reproduce jobs which they had once typeset without substantial effort. The ability to store, retrieve, and reproduce data was a prime sales feature represented to plaintiffs, and was a prime inducement in [plaintiffs'] decision to purchase.

The record further supports that the EditWriter did not function as represented. The "brains" of the machine, or the "ram board", was not functional; the keyboard locked up; the viewing screen blanked out or information shown on the screen did not transfer to the photo unit; the photo unit produced crooked lines, bouncy type, spontaneous capitalization, and shadow images. Moreover, the disk drive alignment malfunctioned, erasing information recorded onto the floppy disks. They experienced similar problems with two replacement machines. In another unchallenged finding, the court stated:

Although plaintiffs worked on the equipment whenever possible, days, nights and weekends, they were unable to make any of the Editwriter 7500's function as represented. Despite many repair efforts by Compugraphic Corporation representatives and despite continuous efforts by plaintiffs to make the equipment perform, it proved wholly impossible to make it perform as represented from the time of the initial installation in July, 1978, through the trial of this matter. This was a more than reasonable period of time to discover that the equipment would not operate as represented.

As a result of the machine breakdowns, the Barnards could not meet deadlines, received customer complaints over the quality of the jobs produced, and had to absorb expenses of redoing jobs which the EditWriter was supposed to store. No error is assigned to the court's finding which states:

The Compugraphic experience was devastating upon plaintiffs' business. Production delays, poor quality output and the inability to retrieve stored data caused plaintiffs to lose customers and profits, professional prestige, and to expend funds on nonproductive employee labor.

The Barnards were awarded $117,797.55 plus costs and interest for the value of data stored in the machine, lost profits, employee wages and the purchase price of the machine and certain accessories. Compugraphic's appeal involves the propriety of this award.

Compugraphic essentially contends (1) the preponderance of the evidence shows the EditWriters did not "frequently" malfunction or have "considerable down time" as found by the trial court; (2) the evidence concerning the value of stored data that was destroyed or could not be used and lost profits from machine breakdowns was speculative.

It is well established this court will not disturb trial court findings which are supported by the evidence even if we may have found otherwise. *Thorndike v. Hesperian Orchards, Inc.*, 54 Wn.2d 570, 343 P.2d 183 (1959).

An appellate court reviewing findings based on conflicting evidence, . . . need not consider evidence contrary to the findings. The question is, rather, "whether the evidence most favorable to the prevailing party supports challenged findings." *North Pac. Plywood, Inc. v. Access Road Builders, Inc.*, 29 Wn. App. 228, 232, 628 P.2d 482 (1981).

*Structurals Northwest, Ltd. v. Fifth & Park Place, Inc.*, 33 Wn. App. 710, 716, 658 P.2d 679 (1983). After reviewing the record, we conclude the court's findings of fact on these issues are supported by the evidence and those findings support the court's damage award.

Since Compugraphic does not challenge the court's findings concerning its liability or the *fact* that the Barnards were damaged, those findings are verities. *Spokane v. Department of Labor & Indus.*, 34 Wn. App. 581, 633 P.2d 843 (1983). Under these circumstances, the Barnards are not to be denied recovery because the amount of damage is not susceptible to exact ascertainment or apportionment between Compugraphic's fault and other factors which may have contributed to the loss. *Alpine Indus., Inc. v. Gohl,* 30 Wn. App. 750, 755, 637 P.2d 998, 645 P.2d 737

(1981); *V.C. Edwards Contracting Co. v. Port of Tacoma,* 7 Wn. App. 883, 889, 503 P.2d 1133 (1972), *aff'd,* 83 Wn.2d 7, 514 P.2d 1381 (1973). Evidence of damage is sufficient if it is the best evidence available and affords a reasonable basis for estimating the loss. *Reefer Queen Co. v. Marine Constr. & Design Co.,* 73 Wn.2d 774, 781–82, 440 P.2d 448 (1968). Where damages cannot be ascertained with precision, the trial court must exercise its sound discretion. *V.C. Edwards Contracting Co. v. Port of Tacoma, supra* at 889. The amount of the award will, therefore, not be overturned absent a showing of abuse.

A careful review of the record leads us to conclude the Barnards provided the trial court with a reasonable basis for estimating their losses. Compugraphic's contentions go to the weight to be given the testimony and credibility of the witnesses which was within the trial court's province. The court's award was within the evidence and will therefore not be overturned.

■ We disagree with Compugraphic's contention that the award must be reversed because the Barnards did not show Compugraphic foresaw the extent of the loss. It is not necessary that the *specific* injury or *amount* of harm be foreseen, but only that a reasonable person in Compugraphic's position would foresee that in the usual course of events, damages would follow from its breach. *Larsen v. Walton Plywood Co.,* 65 Wn.2d 1, 7, 390 P.2d 677 (1964). That was shown here.

■ Nor do we agree that in computing their lost profits the Barnards were required to deduct their employees' labor costs. Both the Barnards and their accountant testified no additional labor would have been required to do the jobs which were lost because of the EditWriter's malfunctions. Thus, employee costs were a fixed expense, unaffected by defendant's breach, and need not have been deducted in calculating profits. *Coast Trading Co. v. Parmac, Inc.,* 21 Wn. App. 896, 910, 587 P.2d 1071 (1978).

Finally, Compugraphic's contention the Barnards failed to mitigate their damages by refusing to purchase a dual

disk drive which would duplicate storage of information recorded onto the floppy disks or failing to solicit dissatisfied customers has no merit. The record does not show the dual disk drive would necessarily rectify the machine malfunctions. Yet, the Barnards testified they were informed by Compugraphic if they purchased this additional part, they would be required to waive their right to repair work or a replacement machine. We decline to adopt a rule requiring the injured party to purchase additional devices so that the machine would operate as originally warranted, particularly when there was a clear risk that the part would not eradicate the problems encountered. It would have been unreasonable to require the Barnards to pursue dissatisfied customers as urged by Compugraphic. The evidence shows this pursuit would have been unsuccessful.

■ We do, however, find merit in Compugraphic's contention the Barnards should not be permitted to retain the EditWriter and at the same time recover its purchase price. The court's judgment and damage award does not address the disposition of the EditWriter. The measure of damages for breach of warranty, upon which the award was based, is generally the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted. RCW 62A.2–714(2). The evidence shows the Barnards used the EditWriter up to the time of trial; it therefore had some residual value. Consequently, permitting them to retain the machine while recovering its full purchase price gives them, to some degree, double recovery. *See Melby v. Hawkins Pontiac, Inc.*, 13 Wn. App. 745, 750, 537 P.2d 807 (1975). We therefore remand for disposition of the EditWriter.

The Barnards' appeal involves two issues: whether the court erred in refusing to award them (1) the purchase price of certain accessories which they purchased for the EditWriter, *i.e.*, film fonts and width cards, and (2) the interest they paid for financing the purchase of the EditWriter. We find no error.

Concerning the first issue, the Barnards have pointed to

no evidence in the record which supports that these accessories were worthless. However, we remand this issue for further disposition. If the trial court determines the Edit-Writer should be returned to Compugraphic and finds the accessories are of no further use to the Barnards, then Compugraphic, upon return of the accessories, should refund the purchase price of the returned merchandise. On the other hand, if the court determines the Barnards should retain the EditWriter and adjusts its award to reflect that retention, then the denial of a recovery of the purchase price of the accessories is affirmed.

With respect to the interest issue, while the Barnards produced evidence that interest was part of their damages, they did not present their theory of recovery to the trial court. *See generally Wilson v. Steinbach,* 98 Wn.2d 434, 440, 656 P.2d 1030 (1982). Notwithstanding, we find no error.

■ In an action for breach of warranty, the buyer is entitled to incidental and consequential damages. RCW 62A.2–714, .2–715. Although some courts have held otherwise, *Carl Beasley Ford, Inc. v. Burroughs Corp.,* 361 F. Supp. 325 (E.D. Pa. 1973), *aff'd,* 493 F.2d 1400 (3d Cir. 1974); *Thompson Chrysler–Plymouth, Inc. v. Myers,* 48 Ala. App. 350, 264 So. 2d 893 (1972); *Burrus v. Itek Corp.,* 46 Ill. App. 3d 350, 360 N.E.2d 1168, 1172 (1977), we agree with those cases which hold interest is not a part of the value of the goods as warranted or consequential damages arising from the defendant's breach, but is merely the cost of money borrowed to buy goods because capital is unavailable to the purchaser. *Chatlos Sys., Inc. v. National Cash Register Corp.,* 635 F.2d 1081 (3d Cir. 1980); *Long v. Quality Mobile Home Brokers, Inc.,* 271 S.C. 482, 248 S.E.2d 311 (1978). As was stated in *Chatlos,* at page 1088:

If . . . the buyer is awarded lump sum damages, he would be able to make a replacement purchase without borrowing and incurring interest expenses. To the extent, therefore, that the recovery included interest on the original purchase, it would constitute a windfall.

Here, interest on the money borrowed to purchase the EditWriter would have been incurred by the Barnards whether the machine conformed or was defective. Consequently, the interest charges did not arise from Compugraphic's breach.

The damage award is affirmed, except we remand for disposition of the EditWriter and the accessories.

ROE, C.J., and MUNSON, J., concur.