**Laddie NACHAZEL and Linda Nachazel, Appellees,**

v.

**MIRACO MFG., Appellant.**

No. 87–146.

Supreme Court of Iowa.

Nov. 23, 1988.

John F. Bierman, III of Bierman, Bierman & Stewart, P.C., Grinnell, for appellant.

Robert A. Hutchison and Robert R. Smith of Brown, Winick, Graves, Donnelly, Baskerville & Schoenebaum, Des Moines, for appellees.

SCHULTZ, Justice.

The significant issue in this breach of warranty action is whether the buyer may recover consequential damages for interest on a purchase price loan and costs of installation of the defective product. The trial court submitted these items of damages to the jury for its consideration. We hold that the interest and a portion of the installation were not incurred as a result of the breach.

Laddie and Linda Nachazel brought this action against Miraco Manufacturing for damages arising out of the purchase from defendant of hog farrowing houses and nurseries known as Mirahuts. Although several theories of liability were presented to the jury for consideration, the jury awarded damages for the breach of express warranty and strict liability. Plaintiffs waived their claim for strict liability.

Defendant appealed, claiming that the trial court erred in failing to direct a verdict on the issue of causation and damages and in submitting, as an element of consequential damages, the interest and installation expenses incurred in purchasing and erecting the buildings.

Plaintiffs were introduced to defendant's products at a trade fair in 1981. They purchased twenty-six Mirahuts from the defendant. Plaintiffs testified that defendant's representatives told them that if any of their pigs raised in the Mirahuts experienced scours, their money would be refunded. Defendant's literature also claimed that "bacterial scours are eliminated with this system."

The accuracy of these alleged representations became a critical issue at trial. Plaintiffs testified that the buildings leaked rain and snow, causing their pigs to develop bacterial scours. They stated they were not able to use the huts in the winter and discontinued using the buildings on a regular basis after about two years. Their evidence was that the buildings were worthless and that defendant refused to take them back. They said their pig mortality rate was higher in the huts than in their regular confinement quarters. Defendant's evidence, on the other hand, showed that the buildings were not defective and did not cause plaintiffs any damage. The jury agreed with plaintiffs' version of the facts.

The court of appeals rejected defendant's claim that it was entitled to a directed verdict because of the failure of proof on the issues of causation and damages. We agree with the court's conclusion that there was substantial evidence in the record to support both of these issues as they relate to a breach of warranty, actual damages and the portion of consequential damage relating to loss of profits. The trial court correctly submitted these matters to the jury for determination.

Defendant's remaining issue concerns the trial court's instruction on damages. The court instructed that the jury consider "the loss on the purchase of the Mirahuts, installation costs actually paid (excluding any amount for their own labor), interest expense, and the value of the loss of profits attributable to the pigs which would have been produced had the Mirahuts not been defective." This instruction detailed the measure of actual damage for breach of warranty. The defendant confines its attack to the court's inclusion of interest and installation expenses as consequential damages, claiming these expenses were not caused by any breach of warranty.

The court of appeals held that the interest payments and the installation costs were made prior to the breach and were not caused by defendant's breach of contract. Its remedy for this suggested error was a remand for a new trial limited to the issue of damages. Plaintiffs sought further review on the issue of the deleted damages. Defendants, in this case, maintain that the interest and installation costs did not result from the seller's breach.

■ ■ An issue that is related to causation, but is not before us, is the issue of foreseeability of the harm. In negligence cases it is not necessary to a defendant's liability that the wrongdoer should have foreseen the extent of the harm or the manner in which it occurred, so long as the injuries are the natural, though not inevitable, result of the wrong. *Cronk v. Iowa Power & Light Co.*, 258 Iowa 603, 613, 138 N.W.2d 843, 849 (1966). In a breach of warranty case, however, the buyer who has accepted goods and then discovers their defects must show that the seller had reason to know at the time of contracting of the buyer's possible losses caused by a breach to recover consequential damages. §§ 554.2714(3), 554.2715(2)(a), *see also* Restatement (Second) of Contracts § 351(1) (1979). These losses may be foreseeable as a probable result of a breach not only if they follow in the ordinary course of events, but also as a result of special circumstances. Restatement (Second) of Contracts § 351(2) (1979).

The trial court gave one general instruction on the measure of damages covering several theories of recovery. The jury was not told of the foreseeability requirement in its consideration of the breach of war-

ranty claim. The evidence of the seller's knowledge of the Nachazels' need to incur interest expense at the time of contracting is unclear. Plaintiffs did not preserve error in the trial court on this issue, nor did they raise this matter on appeal. We therefore do not consider the issue of foreseeability at the time of contracting.

■ To establish proper damages in this case, we must first determine whether the interest expense and installation costs incurred by plaintiff in the purchase of the Mirahuts were proximately caused by defendant's breach of warranty. A cause is proximate if it is a substantial factor in bringing about a result. *Oak Leaf Country Club, Inc. v. Wilson*, 257 N.W.2d 739, 746 (Iowa 1977). Factual causation also requires a showing that "but for the defendant's conduct, the harm or damage would not have occurred." *State v. Marti*, 290 N.W.2d 570, 585 (Iowa 1980) (citations omitted). In *Marti*, we recognized that legal causation presents a question of whether the policy of the law will extend responsibility to the consequences which have occurred. *Id.* "We recognize that different policy considerations may come into play in criminal prosecutions than in civil trials." *Id.* Varying policy considerations may also apply to different damages claimed under the same theory of recovery. Therefore, to determine legal causation, we must look to the policy considerations.

■ The position of the court of appeals was that the breach of warranty occurred after plaintiffs had incurred their damages; consequently there could be no causation. We disagree. A warranty relates to the condition of the goods at the time of sale and does not cover future defects. *Dittman v. Nagel*, 43 Wis.2d 155, 162, 168 N.W.2d 190, 194 (1969). The warranty is breached at the time of sale. *Id.* at 162, 168 N.W.2d at 194; *Gaffney v. Unit Crane & Shovel Corp.*, 49 Del. 381, 384, 117 A.2d 237, 239 (1955). This coincides with Laddie Nachazel's testimony that the huts were worthless to him at the time of sale.

Defendant's main argument speaks to a different feature of causation. It argues that a buyer cannot recover as consequential damages, expenses made worthless by the seller's breach if the expenses would have been incurred in spite of the breach. It claims that the interest and installation expenses incurred by plaintiffs were due to the purchase of the product and would have been expended with or without a breach of warranty on its part. While it admits some of these costs would have been wasted costs to the plaintiffs, defendant urges that allowing the jury to award damages for these items would put the plaintiff in a better financial position than if the warranties had not been breached.

Defendant's attack on the award of consequential damages is narrow. Defendant only attacks the consideration of interest and installation costs because these expenses did not flow from, and were not incurred as a result of, the breach of contract. We were not cited any of our cases on this point nor did our research reveal any.

■ I. *Interest.* The court of appeals has previously held that interest may be considered an element of consequential damages in a breach of contract suit. *Metropolitan Transfer Station, Inc. v. Design Structures, Inc.*, 328 N.W.2d 532, 536 (Iowa App.1982). We recently reviewed the principles announced in *Metropolitan Transfer. Renze Hybrids, Inc. v. Shell Oil Co.*, 418 N.W.2d 634, 638–39 (Iowa 1988). Although we distinguished the case, we did not dispute or criticize its determination that interest may be an element of consequential damages. However, the interest in *Metropolitan Transfer* was incurred for borrowing money to repair its facility due to defendant's faulty construction. Thus, the interest was a consequence of the breach and would not have been incurred but for the breach. It was not interest on financing the original purchase price as in the present case.

Other jurisdictions have addressed causation in cases where finance charges or purchase money interest charges are sought as consequential damages. Their results are varied.

Plaintiffs do not respond directly to defendant's causation argument, but generally urge that the breach of warranty occurred from the date of purchase and the interest payments were incurred after the breach. Plaintiffs refer to cases from other jurisdictions that have allowed interest or finance charges as consequential damages, citing *Carl Beasley Ford Inc. v. Burroughs Corp.*, 361 F.Supp. 325 (E.D.Pa. 1973) *aff'd*, 493 F.2d 1400 (3rd Cir.1974), and other cases which are either distinguishable or are not on point.

We believe that *Beasley* is of limited aid to plaintiffs in the present case. The *Beasley* plaintiff sought recovery of the purchase price and consequential damages including interest on a purchase price loan, for defendant's breach of warranty after it rejected the goods within a reasonable time. Plaintiff's theory of recovery was under a provision similar to our Iowa Code section 554.2711. This section allows a buyer to cancel and recover as much of the price as has been paid. The court awarded consequential damages, including interest on the purchase price, after determining that the interest expense was foreseeable. *Id.* at 334. The court never spoke to the issue of causation, however. The seller ostensibly had the right to return the goods or to receive credit on the purchase price for the resale of the goods. *See* § 554.2711.

In our case, the plaintiffs' theory of recovery was for damages for accepted goods under section 554.2714. This allows the buyer to keep the goods and recover for the difference in the value of the goods accepted and what they would have had if the goods were as warranted. In *Beasley*, the plaintiff theoretically no longer had the use of the goods, but was incurring an interest expense for their purchase. However, in our case, plaintiffs have the Mirahuts in their possession.

Other jurisdictions have allowed interest expense as consequential damages in breach of warranty cases if the expense was foreseeable at the time of contracting. *Schatz Distrib. Co. v. Olivetti Corp. of America*, 7 Kan.App.2d 676, 681–82, 647 P.2d 820, 826 (1982); *Coyle Chevrolet Co. v. Carrier*, 397 N.E.2d 1283, 1286–87 (Ind. App.1979); *Cf. Jacobs v. Rosemount Dodge–Winnebago South*, 310 N.W.2d 71, 77 (Minn.1981) (finance charges awarded as incidental damages); *Owens v. Meyers Sales Co., Inc.*, 129 Wis.2d 491, 493–94, 385 N.W.2d 234, 235–36 (Wis.App.1986) (interest awarded as incidental damages).

We believe these cases are factually distinguishable from our case, however. The *Schatz* seller placed title with the middleman in a lease-purchase agreement for a computer. After showing the seller breached its warranty, the buyer recovered purchase payments plus interest expended. As in *Beasley*, it appears the buyer did not get to keep the computer. Similarly, in *Coyle*, the plaintiff revoked the acceptance of a purchased automobile. The court allowed finance charges as a part of consequential damages. These holdings fall within the pattern of *Beasley* by allowing interest or finance expenses when the purchased goods have been rejected.

Other jurisdictions have refused to allow damages for interest or finance expenses incurred in purchasing merchandise on the basis that the expense was not caused by the breach. *Delhomme Indus. v. Houston Beechcraft, Inc.*, 735 F.2d 177, 185–86 (5th Cir.1984); *Wagner Tractor, Inc. v. Shields*, 381 F.2d 441, 445 (9th Cir.1967); *Bendix Home Systems, Inc. v. Jessop*, 644 P.2d 843, 846 (Alaska 1982); *Long v. Quality Mobile Home Brokers, Inc.*, 271 S.C. 482, 484, 248 S.E.2d 311, 312–13 (1978); *Barnard v. Compugraphic Corp.*, 35 Wash. App. 414, 420, 667 P.2d 117, 121 (1983).

The courts gave various rationales for their holdings. In *Delhomme*, the court reasoned:

Kansas law requires that such damages must be the reasonably-contemplated "probable result" of the breach, or "arise from" the breach itself. An expense will not ordinarily be considered as an item of incidental or consequential damage to a breach of warranty when the buyer would have incurred the claimed expense

even if the product or goods had been as warranted.

735 F.2d at 185–86 (citations omitted).

Three of the cases indicate that the interest or finance expense is not caused by the breach but rather, are caused by the method used to finance the product. In *Wagner Tractor*, the court reasoned that the costs are completely dependent upon the method chosen to provide the money for its operation and, if the buyer had chosen to finance the goods out of working capital, there would not have been such expense. 381 F.2d at 444–45. In *Barnard*, the court decided that interest did not arise from the breach, "but is merely the cost of money borrowed to buy goods because capital is unavailable to the purchaser." 667 P.2d at 121. Similarly, in *Bendix Home Systems, Inc.*, the court held finance charges were not caused by the breach because "when a buyer elects to, or must, defer payment of the purchase price of an item, in effect he purchases two items: the goods themselves, and the right not to pay for the goods immediately." *Bendix*, 644 P.2d at 846.

Another appellate court showed some hesitation and more restraint than these latter cases. It reversed the lower court and remanded on other reasons but spoke to interest as follows:

> The court included in the value of the goods as warranted the interest paid to the bank on the purchase price. In the absence of special circumstances, interest is not a proper factor to be considered. Interest represents the cost of money borrowed to buy the goods because capital was not available to make a cash purchase. If, however, the buyer is awarded lump sum damages, he would be able to make a replacement purchase without borrowing and incurring interest expenses. To the extent, therefore, that the recovery included interest on the original purchase, it would constitute a windfall. With today's rapidly changing interest structures, however, it may be that the buyer can demonstrate some actual loss. We have difficulty envisioning such a scenario, but leave the plain-

tiff free to present the matter to the district court on remand.

*Chatlos Sys. Inc. v. Nat'l Cash Register Corp.*, 635 F.2d 1081, 1088 (3rd Cir.1980). As we understand the decision, the court would allow damages for interest if the plaintiff could show that the breach had caused him to pay an additional amount.

Finally, perhaps the best discussion of this problem is related in *Michiana Mack, Inc. v. Allendale Rural Fire Protection Dist.*, 428 N.E.2d 1367 (Ind.App.1981). In this case, a fire district bought a fire truck and sued the seller for breach of warranty for accepted goods under a statute similar to our section 554.2714. The plaintiff sought damages for the insurance premiums and finance interest expenses paid in purchasing the truck. In rejecting these expenses, the court distinguished *Coyle:*

> If a buyer accepts goods, discovers such to be non-conforming and properly rejects or revokes acceptance of the goods, then those expenses which are "incidental" to or a "consequence" of that entire transaction may rightfully be recovered. The expenses incurred by the buyer are correctly considered a result of the seller's breach.
>
> In the present case, however, the buyer accepted the goods and did not revoke acceptance (or reject the goods). The buyer retained the value of the goods accepted. Expenses arising therefrom can not be said to be the result of the seller's breach. If the buyer had revoked acceptance due to the seller's breach, then the finance and insurance expenses are the result of the breach. However, where the buyer retains the goods, the expenses are actually the result of the retention of the goods.

428 N.E.2d at 1373.

We have followed the rule that when a contract has been breached, the innocent party is generally entitled to be placed in the position occupied if performance had been rendered as promised. *DeWaay v. Muhr*, 160 N.W.2d 454, 458 (Iowa 1968). Defendant admits that under its approach the buyer must assume wasted expenses. This would not place the innocent party in

the position occupied if the goods were as warranted. Wasted expenses for interest can result when the buyer does not keep the defective goods. We believe that the wrongdoer should be responsible for such expense.

We agree that damages for purchase money interest should be allowable in cases where the buyer has sought recision of the contract or has rejected the goods and sought damages under section 554.2711. In those instances, the remedy seeks to place the buyer in the position occupied before the sale. As a matter of policy, we believe the expense should be considered a result of the seller's breach.

In cases where the buyer has accepted the goods and retained them, seeking damages under section 554.2714, our policy dictates a different result. We hold that interest and finance expenses incurred as a result of the purchase money loan are not caused by the breach. Such expense initially is incurred as a result of the buyer's decision to finance the purchase rather than pay cash. Later, when the buyer elects not to either reject the goods or rescind the contract due to the breach, the buyer continues to use the goods. The buyer's remedy is to recover a lump sum for the diminished value or use of the property and for other consequential damages, such as loss of profits. See §§ 554.2714, 554.2715. The buyer is entitled to interest on this recovery from the date of the commencement of the action. Iowa Code § 535.3 (1985). Interest on retained goods is not a wasted expense, except possibly interest on the diminished value of the goods held during the time before suit is filed. When we consider the difficulty in ascertaining such a loss and the danger of duplication of damages, we believe that policy considerations dictate that the loss cannot be caused by the breach of contract.

■ We believe that our holding is justified under the facts of this case. From the size of the verdict, plaintiffs recovered for loss of profits. The loss of profits was determined by multiplying the number of lost pigs by an anticipated profit. The vast majority of the pigs that were farrowed in these Mirahuts lived however, and the plaintiffs received the benefit of the use of the huts. Plaintiff also necessarily made some damage recovery of the purchase price due to their decreased value from the breach of warranty. Plaintiffs also received interest on the judgment from the date of filing of the suit in 1983. We believe that any further recovery of interest costs would result in a duplication of recovery.

II. *Installation expense.* Defendant urged that installation costs were not caused by any breach of warranty and would have been expended even if the Mirahuts were as warranted. Similar to its claim on interest expense, defendant urges that the plaintiffs must bear any wasted costs. As we indicated in our discussion of interest expense, we believe that such a sterile approach to causation violates our policy of placing the innocent buyer in the position occupied but for the breach.

The determination of causation for installation costs may be slightly different from interest expense for a purchase price loan. We concluded that interest expense may be recoverable when recision occurs or there has been a rejection of the goods by the buyer. On the other hand, we found interest expense is generally not recoverable when the goods have been accepted and the buyer retains the use of the property. The question then becomes whether installation expenses may be recoverable in whole or in part when the buyer has retained the property.

■ In breach of contract cases, expenditures in the preparation and part performance of the contract are recoverable, especially when other measures fail. *C.C. Hauff Hardware, Inc. v. Long Mfg. Co.,* 260 Iowa 30, 35, 148 N.W.2d 425, 428 (1967). The innocent party may incur expenses in reliance of the contract, and these reliance expenses are foreseeable by the defaulting party at the time of entering into the contract. *Id., citing* 22 Am.Jur.2d, *Damages* § 159, pp. 227, 228. The recovery for installation costs should be reduced by any value or benefit of the product that remain in the buyer's hands, however.

*Brenneman v. Auto–Teria, Inc.*, 260 Or. 513, 491 P.2d 992, 996 (1971) *citing Williston on Contracts* p. 352, § 1363A (3d ed. 1968).

When we apply these principles to the facts before us, it is apparent that the defendant could foresee the installation costs. The plans accompanying the product called for concrete and electrical installations. It is obvious from the record that this type of installation would have no value to the plaintiffs except to accommodate the Mirahuts. To the extent the Mirahuts were unusable because of the breach of contract, these expenses added no benefit to the plaintiffs. Under our interpretation of legal causation, a fact finder could find that the diminution in value of the installation costs were a direct and natural result of the breach of warranty.

Laddie Nachazel presented evidence that for tax purposes he considered these installation costs to have a twelve-year life. Plaintiffs also testified that for their purposes, these Mirahuts had no value. However, the evidence also shows that they had the use of these huts for a period of over two years and continued to use them on a periodic basis.

We conclude the trial court erred in allowing the jury to consider the total cost of installation as a consequential damage. The court should have told the jury that any value or benefit to the plaintiffs remaining that resulted from the installation costs, could not have been caused by the breach of warranty. They should therefore reduce any such damage award accordingly.

III. *Disposition.* As we have indicated, we believe the trial court erred in instructing the jury on interest and installation costs damages. The court should not have allowed the jury to consider the cost of interest, but should have instructed the jury to decrease the installation costs to offset any remaining benefit to the plaintiffs resulting from the installation costs.

The amount of interest and installation costs is certain. The undisputed evidence showed the interest cost to be $12,061 and the installation costs to be $4,591. What is uncertain is the amount of interest and installation costs that are reflected in the jury verdict. Unfortunately, the jury was not required to answer special interrogatories on the amount of damage for each claim. In cases where certain portions of the damages are contested, it is a better practice to submit interrogatories requiring a jury to determine damages separately.

Defendant is entitled to a new trial on the issue of damages. In reviewing the record, the court notes that the parties have been through one long trial and successive appeals. On the first trial, the plaintiffs recovered a substantial verdict. We believe this is a proper case to give the plaintiffs an opportunity to file a remittitur. *See Ives v. Swift & Co.*, 183 N.W.2d 172, 178 (Iowa 1971). Without deciding the validity of such damages, we believe that such amount should be arrived at by including the entire amount of the interest and one-half of the installation expense. If the plaintiffs within thirty days from the filing of this opinion, file with the clerk of the district court a remittitur, agreeing to a reduction in the amount of their judgment in the sum of $14,356 plus interest accrued on this sum, this case shall stand affirmed. If such remittitur is not filed by the plaintiffs, the case is reversed and remanded to the district court for a new trial solely on the issue of damages to be awarded.

DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT AFFIRMED ON CONDITION.