# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| KEITH L. HOLMQUIST and KAY BURDINE HOLMQUIST, f/k/a KAY BURDINE, husband and wife; and FREDERICK A. KASEBURG, a single man, | ) ) ) ) ) | DIVISION ONE<br><br>No. 73335-4-I |
| Appellants, | ) ) ) | |
| v. | ) ) | PUBLISHED OPINION |
| KING COUNTY, a political subdivision of the State of Washington, | ) ) ) ) | |
| Defendant, | ) ) | |
| CITY OF SEATTLE, a municipal corporation, | ) ) ) | |
| Respondent. | ) ) ) | FILED: February 8, 2016 |

DWYER, J. — Keith and Kay Holmquist and Frederick Kaseburg (collectively, the owners) prevailed against King County and the City of Seattle in this action to quiet title to certain Seattle real property. Both the City and the County appealed, but only the City filed a notice of supersedeas without bond. After we affirmed the trial court judgment, the owners moved the trial court to award damages resulting from the City's decision to supersede the judgment quieting title. The trial court denied their motion. We now reverse that decision and remand the matter to the superior court for entry of an award of damages consistent with this opinion.

I

*A. Adjacent property owners quieted title to the street end of NE 130th*

The Holmquists and Kaseburg, the owners of developed single family residential lots, filed this action seeking to quiet title to certain street end property located between their properties. The real property at issue abuts Lake Washington. In this action, filed initially against King County, the owners traced their title to their predecessors, who came into ownership when King County vacated the NE 130th Street right-of-way in 1932.[1] The superior court granted the City's motion to intervene, over the owner's objection that the City lacked any colorable claim to or interest in the vacated NE 130th Street right-of-way. On May 23, 2013, the trial court entered judgment quieting title against King County and the City and in favor of the owners, each for one-half of the former street end property.

*B. The City superseded enforcement of the judgment quieting title*

Both the City and King County appealed, but only the City sought to stay enforcement of the trial court's judgment quieting title in the owners. The City filed a notice of supersedeas without bond pursuant to RCW 4.96.050[2] and RAP 8.1(b)(2) and (f).[3]

---

[1] Further details of the underlying action are set forth in Holmquist v. King County, 182 Wn. App. 200, 328 P.3d 1000, review denied, 181 Wn.2d 1029 (2014).

[2] RCW 4.96.050 provides, in pertinent part: "No bond is required of any local governmental entity for any purpose in any case in any of the courts of the state of Washington."

[3] RAP 8.1 provides, in pertinent part:

> **(b) Right to Stay Enforcement of Trial Court Decision.** A trial court decision may be enforced pending appeal or review unless stayed pursuant to the provisions of this rule. Any party to a review proceeding has the right to stay enforcement of . . . a decision affecting real . . . property, pending review.
> . . . .

The owners objected to the City's maintenance, during the appeal, of a 4-foot by 4-foot sign on the vacated NE 130th street end right-of-way property announcing the City's intention to develop a forthcoming "N.E. 130th Shoreline Street End Improvement" and reciting that the project is intended to "improve public access to the shoreline street end." The sign contained the familiar logo of the Seattle Parks and Recreation department, and invited the observer to "visit us at seattle.gov/parks." The City also maintained a web site showing the vacated property as a public waterfront street end, inviting public use and occupancy as a public beach. The trial court allowed the City to maintain its sign on the contested property during the appeal.

As a result of the City's notice of supersedeas, the public continued to use the contested property while the City's appeal progressed. During the summers of 2013 and 2014, members of the public accessed the property from the Burke-Gilman trail and used the property for a public beach, swimming, storing and launching watercraft, parking cars, mooring boats, and staging beach parties.

The City's appeal was unsuccessful. We affirmed the trial court's decision, questioning the basis for the City's assertion of any interest that could justify the City's intervention in the owners' quiet title action against King County, given that the City was never in the chain of title. Holmquist v. King County, 182

---

(2) *Decision Affecting Property*. Except where prohibited by statute, a party may obtain a stay of enforcement of a decision affecting rights to possession, ownership or use of real property . . . by filing in the trial court a supersedeas bond . . . .

. . . .

**(f) Supersedeas by Party Not Required to Post Bond.** If a party is not required to post a bond, that party shall file a notice that the decision is superseded without bond and, after filing the notice, the party shall be in the same position as if the party had posted a bond pursuant to the provisions of this rule.

Wn. App. 200, 328 P.3d 1000 (2014). The Supreme Court denied the City's petition for review. 181 Wn.2d 1029 (2014). The case was mandated on February 13, 2015. See RAP 12.5(a), (b)(3).

*C. The superior court denied the owners' motion for an award of damages caused by the City's supersession of its judgment*

After the mandate issued, the owners sought an award of damages against the City for depriving them of the exclusive use and enjoyment of the property and for the City's public benefit in continuing to maintain the property for public use during the 21 months in which the City's appeal was pending. As a measure of damages, the owners advanced the City's own calculation of the price per square foot charged by the City to private parties to lease comparable waterfront street end properties. See Seattle Ordinance (SO) 123611 (2011). The City contested the owners' right to collect damages but did not offer the court a different methodology for calculating damages.

The superior court denied the motion for an award of damages on March 10, 2015.[4] The owners timely appealed.

II

The owners first contend that the City is liable for any damages they incurred as a result of its decision to supersede the trial court's judgment. This is so, they assert, because a local government that supersedes without bond is nevertheless liable for damages resulting from that supersession. We agree.

The question of whether the City may be liable to the owners for damages caused by its choice to supersede, without bond, the trial court's judgment

---

[4] The order states simply, "IT IS HEREBY ORDERED that the Motion to Establish Damages Due to City's Stay is DENIED."

regarding ownership of the street end property is controlled by our Supreme

Court's decision in Norco Construction, Inc. v. King County, 106 Wn.2d 290, 721

P.2d 511 (1986).

Therein, our Supreme Court held that King County's supersedeas of an

adverse land use decision without bond did not exempt it from damages resulting

from the inability of the property owner, Norco, to use its property while the

supersedeas was in place.

> We now turn to Norco's claim that it is entitled to recover damages allegedly resulting from King County's supersession of enforcement of the trial court's writ of mandamus.
>
> It is undisputed that King County did not have to post a bond in order to supersede enforcement of the trial court decision. Ordinarily, a party must file a supersedeas bond in order to supersede the enforcement of a trial court decision pending appeal. RAP 8.1(b). The State, however, is not required to post such a bond in order to supersede enforcement, on the theory that if the trial court judgment is affirmed, the State treasury provides an adequate guaranty that the prevailing party will be able to collect the amount of the judgment. See RCW 4.92.080; Rutcosky v. Tracy, 89 Wn.2d 606, 612, 574 P.2d 382, cert denied, 439 U.S. 930 (1978). This exemption from the requirement of posting a supersedeas bond also applies to counties. Hockley v. Hargitt, 82 Wn.2d 337, 347, 510 P.2d 1123 (1973). King County clearly complied with these rules by filing a notice that the decision was superseded without bond. This act put King County "in the same position as if [it] had posted a bond . . ." RAP 8.1(c).
>
> Norco contends that, pursuant to RAP 8.1(b)(2), it is entitled to damages caused by King County's superseding enforcement of the trial court judgment. RAP 8.1(b)(2) concerns the amount of the supersedeas bond to be fixed in decisions affecting property. It provides,
>
>> If the decision determines the disposition of property in controversy, or if the property is in the custody of the sheriff, or if the proceeds of the property or a bond for its value are in the custody or control of the court, the amount of the supersedeas bond shall be fixed at such sum only as will secure any money judgment *plus the amount of loss which a party may be entitled to recover as a result of the*

> *inability of the party to enforce the judgment during review.*
>
> (Italics ours.)
> Thus, RAP 8.1(b)(2) authorizes the trial court to include the amount of loss resulting from the supersession of enforcement of a decision affecting property in the bond amount. This indicates that when a party supersedes a trial court decision affecting property and is unsuccessful on appeal, the prevailing party may recover damages resulting from the supersession.
>
> . . . .
>
> We conclude that pursuant to RAP 8.1(b)(2), a party who supersedes enforcement of a trial court decision affecting property during an unsuccessful appeal is liable to the prevailing party for damages resulting from the delay in enforcement. King County's exemption from the requirement of posting a bond does not affect its potential liability for such damages. As long as it has filed a notice that the trial court decision is superseded without bond, a party that is exempt from the bond requirement is in the same position as if it had posted a bond. RAP 8.1(c).
> We hold that Norco is entitled to recover damages which resulted from King County's supersession of enforcement of the trial court's writ of mandamus.

Norco, 106 Wn.2d at 295-97; see also Ames v. Ames, 184 Wn. App. 826, 855, 340 P.3d 232 (2014) (In Norco, "our Supreme Court . . . noted that under RAP 8.1(b)(2), a party who supersedes enforcement of a trial court decision affecting property during an unsuccessful appeal is liable to the prevailing party for damages resulting from the delay in enforcement.").

Pursuant to Norco, Washington courts follow the established rule that once an appeal has failed, the supersedeas obligor's "liability for damages . . . is *absolute*." John Hancock Mut. Life Ins. Co. v. Hurley, 151 F.2d 751, 755 (1st Cir. 1945) (emphasis added).

In all aspects relevant to the question of liability arising from supersedeas without bond, this case is indistinguishable from Norco. Like King County, the City was statutorily exempt from posting a supersedeas bond. RCW 4.96.050.

The City chose to take advantage of this exemption by filing a notice of supersedeas without bond. Thereafter, the City's appeal was unsuccessful. Therefore, like Norco, the owners "[are] entitled to recover damages which resulted from [the City]'s supersession of enforcement of the trial court's [judgment]." Norco, 106 Wn.2d at 297.

The superior court's rationale for denying the owners' motion for an award of damages was not made clear in its order. To the extent that its decision was based on the incorrect conclusion that the City was not subject to liability for superseding the judgment, it erred.

III

The owners next contend that the trial court erred by denying them an award of damages. This is so, they assert, because they established that they were damaged by the City's supersession of the trial court's decision and presented a valid methodology for quantifying their damages. We agree.

We apply general principles for establishing damages. Claimants generally must establish damages with reasonable certainty.[5] Lewis River Golf, Inc. v. O.M. Scott & Sons, 120 Wn.2d 712, 717, 845 P.2d 987 (1993); accord Sherrell v. Selfors, 73 Wn. App. 596, 601, 871 P.2d 168 (1994) (applying the reasonable certainty standard to an intentional trespass case). "Furthermore, the doctrine respecting the matter of certainty, properly applied, is concerned more

---

[5] The fact of loss is established with reasonable certainty when it is established by a preponderance of the evidence. Lewis River Golf, Inc. v. O.M. Scott & Sons, 120 Wn.2d 712, 717-18, 845 P.2d 987 (1993) (citing Roy Ryden Anderson, Incidental and Consequential Damages, 7 J.L. & Com. 327, 395-96 (1987)).

with the *fact of damage than with the extent or amount of damage.*" <u>Gaasland Co. v. Hyak Lumber & Millwork, Inc.</u>, 42 Wn.2d 705, 712, 257 P.2d 784 (1953). Once the fact of loss is proved with reasonable certainty, uncertainty or difficulty in determining the amount of the loss will not prevent recovery. <u>Lewis River Golf</u>, 120 Wn.2d at 717–18; <u>accord</u> <u>Barnard v. Compugraphic Corp.</u>, 35 Wn. App. 414, 417, 667 P.2d 117 (1983) ("[Plaintiffs] are not to be denied recovery because the amount of damage is not susceptible to exact ascertainment."). Although mathematical certainty is not required, the amount of damages must be supported by competent evidence. <u>Fed. Signal Corp. v. Safety Factors, Inc.</u>, 125 Wn.2d 413, 443, 886 P.2d 172 (1994). Evidence of damage is sufficient if it gives the trier of fact a reasonable basis for estimating the loss and does not require mere speculation or conjecture. <u>Clayton v. Wilson</u>, 168 Wn.2d 57, 72, 227 P.3d 278 (2010); <u>accord</u> <u>Interlake Porsche & Audi, Inc. v. Bucholz</u>, 45 Wn. App. 502, 510, 728 P.2d 597 (1986) ("Damages must be supported by competent evidence in the record; however, evidence of damage is sufficient if it affords a reasonable basis for estimating the loss and does not subject the trier of fact to mere speculation or conjecture." (citation omitted)). In this regard, the law has not significantly changed since it was summarized by the Supreme Court six decades ago.

> The most important qualification, and one relevant to the case at bar, is the difference in the quantum of proof needed to establish the fact of damage as against that needed to establish the amount of damage:
>> There is a clear distinction between the measure of proof necessary to establish the fact that the plaintiff has sustained some damage and the measure of proof necessary to enable the jury to fix

the amount. Formerly, the tendency was to restrict the recovery to such matters as were susceptible of having attached to them an exact pecuniary value, but it is now generally held that the uncertainty which prevents a recovery is *uncertainty as to the fact of the damage and not as to its amount and that where it is certain that damage has resulted, mere uncertainty as to the amount will not preclude the right of recovery*

. . . .

The damages must be susceptible of ascertainment in some manner other than by mere speculation, conjecture, or surmise and by reference to some definite standard, *such as market value, established experience, or direct inference from* known circumstances. (Italics ours.)

Gaasland Co., 42 Wn.2d 705, 713, 257 P.2d 784 (1953) (quoting 15 AM. JUR. Damages § 23, at 414-16 (1938)).

The owners assert that they are entitled to an award of damages because they were deprived of the exclusive use of the street end property during the pendency of the appeal.[6] They are correct.

Regarding the *fact* of damage, the owners presented undisputed evidence that, as a result of the City's supersession of the trial court's judgment, against the owners' will, the owners were denied the exclusive use of their real property while the public was allowed to continue using the street end property as a public beach. The City concedes this point but argues that, because the owners could use the beach in concert with other members of the public during the appeal period, the owners suffered neither actual damage nor compensable loss. The City could not be more wrong.

---

[6] Their claim was more detailed in the trial court, where they claimed that they were damaged by the "inability to own, possess, improve, landscape, and incorporate the property into their residential use of their lots."

The City's argument ignores that "[t]he very essence of the nature of property is the right to its exclusive use." Olwell v. Nye & Nissen Co., 26 Wn.2d 282, 286, 173 P.2d 652 (1946); accord Guimont v. Clarke, 121 Wn.2d 586, 608, 854 P.2d 1 (1993) (fundamental attributes of ownership include "the right to possess, exclude others from, or dispose of property"). Stated differently, "the right to exclude others" is "one of the most essential sticks in the bundle of rights that are commonly characterized as property." Kaiser Aetna v. United States, 444 U.S. 164, 176, 100 S. Ct. 383, 62 L. Ed. 2d 332 (1979).

Respecting the paramount right to exclude others, Washington courts compensate the loss of exclusive possession under a variety of legal theories. See, e.g., Bradley v. Am. Smelting & Ref. Co., 104 Wn.2d 677, 692-93, 709 P.2d 782 (1985) (trespass claim for airborne pollution that "invaded the plaintiff's interest in the exclusive possession of his property"); Highline Sch. Dist. No. 401 v. Port of Seattle, 87 Wn.2d 6, 11, 548 P.2d 1085 (1976) (inverse condemnation based on noise pollution); Kuhr v. City of Seattle, 15 Wn.2d 501, 504, 131 P.2d 168 (1942) (where encroachment interferes with owner's right to exclusive use and enjoyment, "we think it of little moment what the theory of the injured party's cause of action may be"). Moreover, courts assess damages for even minimal interference with an owner's right of exclusive use and possession. See Loretto v. Teleprompter Manhattan CATV Corp., 458 U.S. 419, 422, 102 S. Ct. 3164, 73 L. Ed. 2d 868 (1982) (owner entitled to compensation for television company's installation of "'cable slightly less than one-half inch in diameter and of approximately 30 feet in length'" above roof of apartment building).

The City's argument—that only the loss of the use of private property *altogether*, and not just the loss of exclusive use, is compensable—ignores this established law. Furthermore, the City's assertion that the right to the exclusive use of property is not, in itself, of value rings hollow given that the City derives income from leasing comparable waterfront street end properties to abutting property owners so that they may use the property exclusively.

Regarding the *amount* of damages, the owners propose to quantify their damages using the rental value of the street end property, as calculated using the City's own formula for renting comparable properties. This is an unremarkable proposition, as rental value is a well-established measure of damages where a party has been deprived of ownership rights. See Colby v. Phillips, 29 Wn.2d 821, 824, 189 P.2d 982 (1948) (rental value awarded as offset against the purchase price for defendant's delay in conveying title); Brown v. Pierce County, 28 Wash. 345, 352, 68 P. 872 (1902) (damages for a property owner's lost possession and use of real property measured by the "'fair and reasonable rental value of that property for the purpose for which it was taken and used'"); Panorama Vill. Homeowners Ass'n v. Golden Rule Roofing, Inc., 102 Wn. App. 422, 427-28, 10 P.3d 417 (2000) (measure of recovery for a contractor's unfinished or defective construction of a home); accord Woodworth v. Nw. Mut. Life Ins. Co., 185 U.S. 354, 363, 22 S. Ct. 676, 46 L. Ed. 945 (1902) (appellant who superseded a lower court judgment awarding property to owner liable to the owner, who was kept out of possession, for property's "rents and profits"); 1 DAN. B. DOBBS, DOBBS LAW OF REMEDIES 788 (2d ed. 1993) ("When [a]

trespasser's presence is substantial enough to count as a possession, or even as temporary use, damages for the invasion can be measured by rental value of the land during the period of the trespass. . . . Rental value is also an appropriate measure for temporary takings under eminent domain powers, that is, for taking the land for a limited period of time. The rental market value of the land in these cases represents the value of possession or use." (footnote omitted)); RESTATEMENT (SECOND) OF CONTRACTS § 348(1) (1981) (if breach delays the use of property and the loss of value to the injured party is not proved with reasonable certainty, owner may recover damages based on the rental value of the property); see generally V. Woener, Annotation, Measure and amount of damages recoverable under supersedeas bond in action involving recovery or possession of real estate, 9 A.L.R.3d 330 (1966).

Nevertheless, the City contends that rental value is an unreasonable basis for an award of damages in this case. The City advances two arguments in this regard.[7] Both are unavailing.

First, the City asserts that rental value is an inappropriate measure in this case because the owners neither could have, nor intended to, actually rent the street end property. In advancing this claim, the City misapprehends the owner's purpose in proposing rental value as the measure of damages. The owners do not argue that they intended to rent the property, in whole or in part, or that they would have been bound by the City's methodology for determining the rent they could charge if they did. Rather, their claim is that the City's own methodology

---

[7] The City sets its argument forth in five parts. However, parts one through four all concern the owners' intent or ability to rent the street end property.

for calculating the rental value of comparable properties is a "reasonable basis for estimating [their] loss." This is so because it provides a close approximation of the value of the owners' temporary loss of the exclusive use of their property due to the City's supersession.

Second, the City complains that it did not have notice that the owners would seek to recover damages based on the property's rental value. In advancing this claim, the City ignores that there is no requirement that such notice be given. As the dissent in Norco long ago noted, with some distress:

> I question Norco's ability to seek delay damages when King County had no notice that delay damages would be sought. I recognize, however, that our court rules currently do not provide a mechanism by which entities not required to post bonds may be apprised that delay damages will be sought. Parties posting supersedeas bonds have notice of potential delay damages when an additional amount for delay damages is actually required to be posted.

106 Wn.2d at 297-98 (Goodloe, J., concurring in part, dissenting in part). To the extent that the circumstance described by Justice Goodloe constituted a problem, neither the legislature, by statute, nor the Supreme Court, by rule, has deemed it to be a problem in need of a solution.

Accepting rental value as a reasonable basis for calculating damages for temporary loss of use and occupancy of real property, the owners established their particular damages using the City's own methodology for computing the rental value of waterfront street end properties it owns.[8] Seattle Ordinance 123611 establishes the rental value of these waterfront street ends by (1) determining the per square foot assessed value of the abutting privately owned

---

[8] The City owns 149 waterfront street ends, many of which are leased to adjoining private owners by annual permits.

- 13 -

lot, (2) multiplying that per square foot value times the square footage of the street end, (3) multiplying that value by a "demand probability factor," and (4) multiplying that value by a City standard rate of return to arrive at an annual rental fee.[9] Applying this methodology to the facts herein, the owners reached a figure of approximately $3,600 per month.[10] The supersedeas was in effect for approximately 20.7 months.[11] Therefore, the total proposed damages were $74,520.[12]

Generally, "[a] trier of fact has discretion to award damages which are within the range of relevant evidence." Mason v. Mortg. Am., Inc., 114 Wn.2d 842, 850, 792 P.2d 142 (1990). Herein, because the City chose not to provide an alternative,[13] the evidence supports only one damage calculation—$74,520. This figure is the effective "range" of possible damage awards.

---

[9] This is technically the permitting cost, not the rental cost. At oral argument, the City stated that the cost to lease the property would have been greater. Oral argument at 17:20.

[10] The owners elected to round the actual figure down to this value from $3,601.90. Br. of Appellant at 14-15.

[11] The owners established the time frame by counting from the date of the judgment quieting title, May 23, 2013, to the date of the mandate, February 13, 2015. Oral argument at 19:35. This calculation was unopposed.

[12] The owners also contended that they were entitled to "additional damages" equal to the "substantial governmental benefits [received by the City] by physically appropriating [their] property as a public beach." But the dollar amount that results from an application of the City's rental formula represents the trade-off between the public's use of a given property and private use of the same property. Given that this formula is the basis for the owner's proposed damage award, the City's use of the property as a public beach and the owners' inability to exclude others from using the property are opposite sides of the same coin. We reject the owners' attempt to double count damages resulting from the denial of their exclusive use of the property pending appellate review.

[13] The City conceded at oral argument that it had a full opportunity to present another measure of damages but chose to argue, instead—and erroneously—that its supersession caused no damage. Oral argument at 8:30.

Reversed and remanded to the superior court for entry of a supplemental judgment awarding damages in the amount of $74,520.

We concur: