SUHRHEINRICH, Circuit Judge,
concurring in part and dissenting in part.
I concur in the majority’s resolution of all the issues in this appeal with the exception of (1) allowing CMH a setoff for the rental value of defective home while the Bennetts lived there, and (2) denying the Bennetts an award for the amount of interest they paid on their mortgage.
Under Tennessee law, setoff is an “equitable doctrine” and “therefore, will not be allowed where to do so would work injustice.” Conister Tr. Ltd. v. Boating Corp. of Am., 2002 WL 389864, at *20 (Tenn. Ct. App. Mar. 14, 2002); see also Moore v. Howard Pontiac-Am., Inc., 492 S.W.2d 227, 230 (Tenn. Ct. App. 1972) (authorizing setoff only where “complete justice and equity cannot [otherwise] be meted to the parties”). In this case, I believe that granting CMH a setoff would be inequitable. The Bennetts revoked acceptance of the defective house, but CMH never fulfilled its promises to repair the house and never bought the house back, thereby prolonging the amount of time the Bennetts continued to live there. Yet under the majority’s analysis, CMH would be entitled to a set-off even if CMH had dragged on the dispute so long that the rental value of the house eventually exceeded its purchase price, leaving the Bennetts with no recovery even though CMH is the party at fault. Although the district court’s calculation of the rental value did not completely offset the Bennetts’ recovery, CMH’s “repeated failed assurances and repeated failures to cure” still effectively minimized its liability by prolonging the amount of time the Ben-netts “rented” the defective home. [R. 183]. Applying setoff in this case thus rewards CMH for breaching its contract with the Bennetts.
A setoff in this case is also incompatible with CMH’s actual losses. In Tennessee, the party asserting a claim of setoff has the burden of establishing the right to and amount of setoff. Conister, 2002 WL 38964 at *20; Midwest Bronze, Inc. v. Outlaw Aircraft Sales, Inc., 1999 WL 92652, at *3 (Tenn. Ct. App. Feb. 24, 1999). In my view, CMH failed to meet its burden of proof to establish the existence and amount of loss stemming from the Bennetts’ occupation of the house. The majority acknowledges that the district court reached the “remarkably high” rental value of $1,000/month “with little elaboration.” The majority therefore authorizes the district court on remand to “consider additional evidence or testimony” regarding the rental value of the defective house. Yet it appears that, the very reason the district court’s decision lacked *339 “elaboration” is because CMH failed to produce any evidence at trial regarding its losses or the rental value of the defective house. In fact, the only evidence the district court cited in awarding a setoff was Mrs. Bennett’s testimony about prices for apartments in a nearby city, R. 18B. CMH did not actually assert a right to a setoff until its post-trial brief. R. 171. In any event, it is doubtful that CMH suffered any actual losses from the Bennetts occupying the defective house during the time that CMH failed to repair it or buy it back. Had the Bennetts elected to rent a different home due to the house’s defects, CMH would not be entitled to recover rent from the Bennetts; in fact, CMH would arguably be obligated to reimburse the Ben-netts for rent payments made to a third party. At the very least, CMH is not in a worse position because the Bennetts chose to stay in the defective house rather than rent another place. Under this analysis the Bennetts had to pay mortgage payments plus rent payments in the form of a setoff. At the same time, CMH had been paid in full for a defective house and had the use of that money. We should not punish the Bennetts for making the best of a bad situation, especially when CMH has made no showing that the Bennetts’ occupation of the house reduced the house’s resale value or otherwise caused CMH loss.
I also disagree that the Bennetts were not entitled to an award for the interest they paid on their mortgage. The district court denied the Bennetts’ request for interest on .the ground that the Bennetts would have had to pay interest even if the house was not defective. This does. not follow if at the same time they were required to pay $1,000 a month rent in the form of a setoff. In other words, the district court found that CMH’s breach of contract did not proximately cause the Bennetts’ interest payments. This logic overlooks the fact that the Bennetts timely revoked acceptance of the house. As a result, they no longer have the investment that the interest payments financed. See Nachazel v. Miraco Mfg., 432 N.W.2d 158, 161-64 (Iowa 1988) (allowing recovery of interest where the buyer seeks rescission of the contract because “[wjasted expenses for interest can result when the buyer does not keep the defective goods”). Although the Bennetts’ decision to obtain a mortgage was not a result of CMH’s breach, the loss of their investment was a result of CMH’s breach. Because they no longer own the defective home, they have nothing to show for their $80,000 in interest payments.[1] Thus, by not awarding the Ben-netts interest, the district court did not return them to the position they occupied prior to the transaction, which is the goal of awarding rescission as a remedy. See Lamons v. Chamberlain, 909 S.W.2d 795, 800 (Tenn. Ct. App. 1993) (quoting Williamson v. Upchurch, 768 S.W.2d 265, 271 (Tenn. Ct. App. 1988)). Moreover, awarding the interest payments would not unfairly surprise CMH because the cost of interest is readily foreseeable for a transaction of this nature and amount. See Carl Beasley Ford, Inc. v. Burroughs Corp., 361 F.Supp. 325, 334 (E.D. Pa. 1973) (allowing jury to award interest charges paid by the plaintiff for purchase of defective computer system because “the nature and price of this equipment was such that ... ‘[the defendant] had reason to know* that plaintiff would borrow money to purchase the capital item”); Bobb Forest Prods., Inc. v. Morbark Indus., Inc., 151 Ohio App.3d 63, 783 N.E.2d 560, 579 (2002) COT the nature and price of the product the buyer purchases from the seller is such that ... *340 the seller has reason to know that the buyer would borrow money to purchase the product, then the interest on the loan used to purchase the [goods] may be recovered.”).
While I concede the majority’s point that an award of pre-judgment interest could compensate the Bennetts for the lost time value of their money, the simple fact is that the district court’s award did not accomplish that. Therefore, I would correct the district court’s error regarding the award of interest rather than impinge the district court’s greater discretion regarding pre-judgment interest. See Gentek Bldg. Prods., Inc. v. Sherwin-Williams Co., 491 F.3d 320, 333 (6th Cir. 2007) (reviewing award of prejudgment interest for abuse of discretion).
One final point. The majority expresses concern that the district court’s calculation “undercompensated the plaintiffs.” I share that concern, but I have serious misgivings that the majority opinion’s overall' resolution of this case will solve that problem. This is because the only damages decision the majority firmly reverses is using the total amount of the Bennetts’ mortgage payments rather than the purchase price as the starting point for calculating damages. Ironically, the amount of mortgage payments made by the Bennetts ($123,200) exceeds the total purchase price for the house ($109,597.57). Thus, all other things being equal, the district court’s error in this regard actually benefited the Ben-netts. If, on remand, the district court adheres to its setoff amount of $1000/ month and its restrictive approach to prejudgment interest, neither of which the majority opinion forbids, the Bennetts’ damages will be even lower than they were before this appeal.
As it stands, the Bennetts will receive $113,635 before prejudgment interest ($109,597 purchase price + $4,038 in miscellaneous expenses), but they have no house, they owe CMH $88,000 for rent,[2] and they claim they still owe $102,000 in principal on the house-related portion of their mortgage. [R. 186]. CMH, on the other hand, has the house (which, assuming it’s worth only half of its original value, is worth about $55,000), will receive $88,000 in rent from the Bennetts, and owes the Bennetts only $113,635 before prejudgment interest. In sum, before prejudgment interest, the Bennetts are left with a liability of $76,365, while CMH gains a net of $29,365. Although these numbers are not exact, they demonstrate that the overall damages award places the wrongdoer in a better position than the victim. And in an equity proceeding, the wrongdoer shoujd not be rewarded at the expense of the injured party, i believe that we could achieve a more equitable outcome by denying CMH a setoff and granting the Bennetts an award for interest.

. Although some of this amount in interest may have financed the purchase of the land where the house was installed, the district court could have determined what portion of the interest financed the purchase of the house rather than the land.

. The Bennetts will not actually transfer this amount to CMH, but it will be offset against the $113,635 owed to them from CMH. So, it is a price they effectively must pay to CMH.